LOUISVILLE & N. R. CO. v. McCHORD et al. LOUISVILLE, H. & ST. L. RY. CO. v. SAME. CHESAPEAKE & O. RY. CO. v. SAME. SOUTHERN RY. CO. v. SAME.

(Circuit Court, D. Kentucky. July 16, 1900.)

1. CARRIERS—STATE REGULATION OF RATES—VALIDITY OF KENTUCKY STATUTE
    The Kentucky act of March. 10, 1900, relating to the charging of extortionate rates by railroads, provides that upon complaint to the state railroad commission that any railroad company has charged extortionate rates, or when the commission has reason to believe such rates are being charged, it shall be its duty to hear and determine the matter as speedily as possible, giving notice of the time and place of hearing to the company by mailing a letter to an officer or employé thereof; that the commission shall hear such statements, arguments, and evidence offered by the parties as it shall deem relevant, and may take depositions; that, if the commission shall determine that the company has been guilty of extortion, it shall fix a just and reasonable rate which said company may charge thereafter for like services, which rate shall be entered in its order book, and of which the company shall be given notice; that if the company, its officer, agent, or employé, shall thereafter charge a greater rate than that so fixed, such company, officer, agent, or employé shall be guilty of extortion, and shall be fined as provided in the act, upon prosecution by indictment in the courts of the state, which are given jurisdiction of the offense. Under the constitution and laws of the state, the railroad commission is an administrative body, without

judicial powers, and without power, other than that given in the act, to fix rates. *Held*, that such act is in violation of the constitution of the United States, conceding that it was not intended to apply, as it does by its terms, to interstate as well as to local rates—First, because any order made by the commission thereunder fixing a rate is not uniform in its operation throughout the state, but applies to one company alone, and thus denies to such company the equal protection of the laws; second, because any change in a rate established by a railroad company having been made to depend on a precedent decision that it has been guilty of extortion, and to follow such decision as a penalty, such company is entitled to a judicial determination of that question, and such determination by a nonjudicial body, left to its own discretion as to what shall constitute extortion, and authorized to act merely upon a notice sent by mail to any employé of the company, does not constitute due process of law, nor does the act give the courts, in subsequent criminal proceedings instituted thereunder, any power to review such decision, or to determine whether the rate fixed by the commission is reasonable and just.

2. SAME.

Such act is further invalid as to the Louisville & Nashville Railroad Company, whose charter fixes maximum rates which it may charge, because, without attempting to repeal such charter, it empowers the railroad commission to subject the company to criminal prosecution and heavy punishment for charging the rates therein authorized.

3. SAME.

Such act, in attempting to confer judicial powers on the railroad commission, is also in violation of the constitution of Kentucky (sections 27, 28), which provides that the powers of the government shall be divided into three separate departments,—the legislative, the executive, and the judicial,—and each of them be confined to a separate body of magistracy, and that "no person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others."

4. FEDERAL COURTS—PRELIMINARY INJUNCTION AGAINST ENFORCEMENT OF STATE STATUTE.

Where a state statute, by methods plainly in violation of the constitution of the United States, authorizes a railroad commission to fix a rate of charge for any single railroad company, and the criminal prosecution and punishment by fine or imprisonment of the company or any of its officers or employés for making a charge in excess of such rate, a federal court may properly grant a preliminary injunction against the enforcement of such statute until its validity has been finally determined.

In Equity. On motions for preliminary injunctions.

Helm, Bruce & Helm and Walker D. Hines, for complainant Louisville & N. R. Co.

Helm, Bruce & Helm, for complainant Louisville, H. & St. L. Ry. Co.
Humphrey, Burnett & Humphrey, for complainant Southern Ry. Co.
Wadsworth & Cochran, for complainant Chesapeake & O. Ry. Co.

R. J. Breckinridge, Atty. Gen., Kohn, Baird & Spindle, and Lewis McQuown, for defendants.

EVANS, District Judge. These actions have for a common object the prevention of the threatened enforcement of an act of the general assembly of this state which became a law on the 10th day of March, 1900, and, if constitutional, became effective 90 days thereafter. Including its title, the act is as follows:

"An act to prevent railroad companies or corporations owning and operating a line or lines of railroad, and its officers, agents and employés, from charging, collecting or receiving extortionate freight or passenger rates in this commonwealth, and to further increase and define the duties and powers of the railroad commission in reference thereto, and prescribing the manner of enforcing the provisions of this act and penalties for the violation of its provisions.

"Be it enacted by the general assembly of the commonwealth of Kentucky:

"Section 1. When complaint shall be made to the railroad commission, accusing any railroad company or corporation of charging, collecting or receiving extortionate freight or passenger rates over its line or lines of railroad in this commonwealth, or when said commission shall receive information or have reason to believe that such rate or rates are being charged, collected or received, it shall be the duty of said commission to hear and determine the matter as speedily as possible. They shall give the company or corporation complained of not less than ten days' notice, by letter mailed to an officer or employé of said company or corporation, stating the time and place of the hearing of same; also the nature of the complaint or matter to be investigated, and shall hear such statements, arguments or evidence offered by the parties as the commission may deem relevant; and should the commission determine that the company or corporation is, or has been, guilty of extortion, said commission shall make and fix a just and reasonable rate, toll or compensation, which said railroad company or corporation may charge, collect or receive for like services thereafter rendered. The rate, tolls or compensation so fixed by the commission shall be entered and be an order on the record book of their office, and signed by the commission, and a copy thereof mailed to an officer, agent or employé of the railroad company or corporation affected thereby, and shall be in full force and effect at the expiration of ten days' thereafter, and may be revoked or modified by an order likewise entered of record. And should said railroad company or corporation, or any officer, agent or employé thereof, charge, collect or receive a greater or higher rate, toll or compensation, for like services thereafter rendered than that made and fixed by said commission, as herein provided, said company or corporation, and said officer, agent or employé, shall each be deemed guilty of extortion, and upon conviction shall be fined for the first offense in any sum of not less than $500 nor more than $1,000, and upon a second conviction, in any sum, not less than $1,000 nor more than $2,000, and for the third and succeeding convictions, in any sum, not less than $2,000 nor more than $5,000.

"Sec. 2. The circuit court of any county into or through which the line or lines of road carrying such passenger or freight, owned or operated by said railroad, and the Franklin circuit court shall have jurisdiction of the offense against the railroad company or corporation offending, and the circuit court of county where such offense may be committed by said officer, agent or employé, shall have jurisdiction in all prosecutions against said officer, agent or employé.

"Sec. 3. Prosecutions under this act shall be by indictment.

"Sec. 4. All prosecutions under this act shall be commenced within two years after the offense shall have been committed.

"Sec. 5. In making said investigation said commission may, when deemed necessary, take the depositions of witnesses before an examiner or notary public, whose fee shall be paid by the state, and upon the certificate of the chairman of the commission, approved by the governor, the auditor shall draw his warrant upon the treasurer for its payment."

The complainants severally seek the order of this court enjoining and restraining the defendants, who compose the railroad commission of the state, from carrying into effect any of the provisions of the act, upon the ground that it violates the constitution of the United States —First, in authorizing the commission to fix rates in certain instances upon interstate commerce; second, in authorizing the commission to deprive them of their property without due process of law; third, in authorizing the commission to take from them the equal protection of

the law; fourth, in authorizing the commission to take their property for public use without just compensation; fifth, in authorizing all of these things to be done by a body of executive officers who are not a court, and who are without judicial powers; and, sixth, as to the Louisville & Nashville Railroad Company, by authorizing the defendants to fix rates different from those established by the unrepealable charter provisions of that company, thereby impairing the obligations of its contract with the state of Kentucky.

When the act is closely analyzed, it is found to provide: First, that either when complaint shall be made to the railroad commission accusing any railroad or corporation of charging, collecting, or receiving extortionate freight or passenger rates over its line of railroad in this state, or when that commission shall receive information or have reason to believe that such rates are being charged, collected, or received, it shall be, second, its duty to "hear and determine" the matter as speedily as possible; third, the company complained of shall be given not less than 10 days' notice by letter, mailed to an officer or employé of such company, stating the nature of the complaint or matter to be investigated, and the time and place of hearing it; fourth, the commission shall hear such statements, arguments, or evidence offered by the parties as the commission may deem relevant, and may take the depositions of witnesses; fifth, should the commission determine that the company is or has been guilty of extortion, it shall fix a just and reasonable rate of toll or compensation which said company may charge, collect, or receive for like services thereafter rendered; sixth, the rate so fixed shall be entered in its order book, and a copy mailed to an officer, agent, or employé of the railroad company affected thereby, and after 10 days thereafter shall be in full force until changed by the commission on the record; seventh, should any such railroad, its officer, agent, or employé, thereafter charge, collect, or receive a greater rate of compensation for like services than those thus fixed for it by the commission, such railroad, its agent or employé, shall be guilty of extortion, and shall be fined as provided in the act; and, eighth, of the offense of extortion as thus defined, the various circuit courts of the state shall have jurisdiction by indictment.

The supreme court of the United States in many cases has announced certain fundamental principles which have a more or less direct bearing upon the questions involved in these cases. In Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 458, 14 Sup. Ct. 467, 33 L. Ed. 981, the court used this language:

"The question of the reasonableness of a rate of charge for transportation by a railroad company, involving as it does the element of reasonableness, both as regards the company and as regards the public, is eminently a question for judicial investigation, requiring due process of law for its determination. If the company is deprived of the power of charging reasonable rates for the use of its property, and thus, in substance and effect, of the property itself, without due process of law, and in violation of the constitution of the United States, and in so far as it is thus deprived, while other persons are permitted to receive reasonable profits upon their invested capital, the company is deprived of the equal protection of the laws."

In Reagan v. Trust Co., 154 U. S. 399, 14 Sup. Ct. 1055, 38 L. Ed. 1024, Mr. Justice Brewer, speaking for the court, said:

"These cases all support the proposition that, while it is not the province of the courts to enter upon the merely administrative duty of framing a tariff of rates for carriage, it is within the scope of judicial power and a part of judicial duty to restrain anything which, in the form of regulation of rates, operates to deny to the owners of property invested in the business of transportation that equal protection which is the constitutional right of all owners of other property. There is nothing new or strange in this. It has always been a part of the judicial function to determine whether the act of one party (whether that party be a single individual, an organized body, or the public as a whole) operates to devest the other party of any rights of person or property. In every constitution is the guaranty against the taking of private property for public purposes without just compensation. The equal protection of the laws, which, by the fourteenth amendment, no state can deny to the individual, forbids legislation, in whatever form it may be enacted, by which the property of one individual is, without compensation, wrested from him for the benefit of another or for the public. This, as has been often observed, is a government of law, and not a government of men; and it must never be forgotten that under such a government, with its constitutional limitations and guaranties, the forms of law and the machinery of government, with all their reach and power, must, in their actual workings, stop on the hither side of the unnecessary and uncompensated taking or destruction of any private property legally acquired and legally held."

In Railway Co. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567, it was held that, when a state legislature establishes a tariff of railroad rates so unreasonable as to practically destroy the value of the property of the company engaged in the carrying business, courts of the United States may treat it as a judicial question, and hold such legislation to be in conflict with the constitution of the United States, as depriving the company of its property without due process of law, and as depriving it of the equal protection of the law. In the case of Turnpike Co. v. Sandford, 164 U. S. 578, 17 Sup. Ct. 198, 41 L. Ed. 560, it was held that the courts have the power to inquire whether a body of rates prescribed by a legislature is unjust and unreasonable, and such as to work a practical destruction of rights of property, and, if found so to be, to restrain its operation, because such legislation is not due process of law. In Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819, after an elaborate review of all the authorities, the court held, as it had done frequently before, that a railroad corporation is a person, within the meaning of the fourteenth amendment, declaring that no state shall deprive any person of property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law. In that case the court also held that a state enactment, or regulations made under the authority of a state enactment, establishing rates for the transportation of persons or property by a railroad, that will not admit of the carrier earning such compensation as, under all the circumstances, is just to it and to the public, would deprive such carrier of its property without due process of law, and deny to it the equal protection of the laws, and would therefore be repugnant to the fourteenth amendment of the constitution of the United States. The court held further that, while rates for the transportation of persons and property within the limits of a state are primarily for its determination, the question whether they are so unreasonably low as to deprive the carrier of its property without such compensation as the constitution secures, and therefore without due process of law, cannot be so conclusively determined by the legislature of the state, or by

regulations adopted under its authority, that the matter may not become the subject of judicial inquiry. The court also held further that the idea that any legislature, state or federal, can conclusively determine for the people or for the courts that what it enacts in the form of law, or what it authorizes its agents to do, is consistent with the fundamental law, is in opposition to the theory of all our institutions, as the duty rests upon all courts, state or federal, when their jurisdiction is properly invoked, to see to it that no right secured by the supreme law of the land is impaired or destroyed by legislation. And Mr. Justice Harlan, in delivering the opinion of the court in that case, at page 528, 169 U. S., page 427, 18 Sup. Ct., and page 842, 42 L. Ed., said:

"The perpetuity of our institutions, and the liberty which is enjoyed under them, depend in no small degree upon the power given the judiciary to declare null and void all legislation that is clearly repugnant to the supreme law of the land."

The courts of the United States have not hesitated, and, in order to preserve to all persons, corporations, and individuals, alike, the guaranties of the constitution against invalid legislation, whether state or national, should not hesitate, to enforce the supreme law of the land. If in these cases the legislature or the railroad commission had established any rate, by or through the act complained of, the reasonableness and justness of that rate would be the legitimate subject of judicial inquiry, under the decisions referred to; but no rates have in fact been fixed, and none are authorized to be fixed, except pursuant to the express provisions of the act itself, nor until the commission has, after trial, "determined" that the railroad company has been "guilty of extortion." It will be observed that there is no general power delegated to the commission to fix rates, nor does the statute creating the commission give it any such right. Its sole authority in the premises is stated in the act above set forth, and must be based upon its conviction of the railroad of extortion. It cannot move until what we may call this jurisdictional fact has been ascertained to exist; and then, having proceeded to determine that the railroad has been guilty of extortion, although it has been furnished with no unmistakable statutory standard as to what is to be held to be extortion, it lowers the rate of that road for that particular service. Its own opinion—its own judgment—is the sole guide upon both questions. If the law only conferred on the commission power to fix a schedule of rates for all railroads in the state generally, it would be the duty of the court to await its action in that regard, and then permit those rates, if called in question, to stand or fall as they might, in the court's judgment, be just and reasonable, or the reverse. It might be conceded that, in case a railroad commission was given general power to establish a schedule of rates, a failure on the part of a carrier to conform to those rates when established might be made punishable. Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1055, 38 L. Ed. 1024. But this does not yet reach the cases before us. Here the power given is to be exercised only where the commission has "determined" that the railroad company has been "guilty of extortion" in a given instance or in-

stances complained of, and then apparently only by way of punishment therefor, or as an occasion for laying a foundation for other punishment, although the legislature has established no definite test (unless in the Louisville & Nashville Railroad case) of what is an extortionate rate, and no positive guidance in the case of any of the complainants, unless it be that company whose charges are fixed at the maximum rates stated in its bill. It is frankly and altogether properly conceded upon all hands that the railroad commission is not constitutionally a judicial body, and cannot, under the constitution or laws of Kentucky, rightly exercise judicial functions. Section 27 of the present constitution of the state provides that the powers of the government shall be divided into three separate departments, and each of them be confined to a separate body of magistracy, namely, the legislative, the executive, and the judicial; and section 28 provides that no person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others. Under section 109 to 144, inclusive, the judicial department of the state government is established, and no judicial tribunals except those named therein can lawfully be established in Kentucky. A railroad commission is not one of these. The supreme court of the United States in many cases holds that a railroad commission is a mere administrative body, and part only of the executive department of the government. Our analysis of the act in question, however, has clearly shown that the whole apparent purpose of the act was to give the commission the judicial power, or at least the quasi judicial power, to "hear and determine" whether a railroad has been "guilty of extortion," and as a result to lower the freight rate of that railroad for similar services. The commission could act only upon complaint made to it, unless in the presumably rare instances when information should otherwise come to it. The complaint must show what is loosely called a charging of an "extortionate" freight rate. The company complained of must be notified. This, it is true, must be given, not personally, but only through the mails; and the notice may be sent to a mere employé, who may be the most insignificant laborer, and one who cares nothing for the interests of his employer. But there must be, at the least, this sort of notice through the mails. At the hearing of the complaint, evidence which the commission may adjudge to be "relevant" may be heard. Arguments may be submitted, and depositions may be taken and read. When the commission has "determined" that the company is "guilty of extortion," it shall then fix the rate thereafter to be charged in similar cases by that company only, and not by carriers generally. This shall be entered upon the records of the commission. Afterwards, if the company thus found "guilty of extortion" shall in a like case charge or collect a rate greater than the one thus fixed, or if any of its employés shall do so, it shall be guilty of the crime of extortion. These matters all bear the marks of a judicial proceeding, and the fixing of a lower rate has all the appearance of inflicting that much punishment upon the party found "guilty of extortion" by this nonjudicial body. But the act goes further, and provides that if, after the rate is thus fixed,— after this possible punishment is thus inflicted,—that company charges

a higher rate for similar services, however reasonable it in fact might be in the judgment of a court, the real judicial tribunals of the state are then given the power to punish it or its employés therefor, though the power is apparently withheld from those courts of judicially inquiring whether the rate thus fixed under these circumstances by the commission was just or reasonable, or whether in the case of the Louisville & Nashville Company it exceeded the rate it is expressly authorized to charge by its charter.

It will be seen, too, that the act might literally apply equally and indiscriminately to domestic and to interstate traffic alike, although as to the latter it cannot be pretended that the legislature could give the commission any power whatever. That the commission cannot, upon any complaint or information, lawfully base any action upon charges of freight rates upon interstate commerce, is too clear for argument; but as that may be true, and the commission still has power to fix rates upon local freight, the question yet remains as to the respective rights of the complainants and the commission in respect to domestic commerce. In a line of cases like Baldwin v. Franks, 120 U. S. 686, 7 Sup. Ct. 656, 763, 32 L. Ed. 766, the rule is established that where the language of a statute is so broad as to cover cases which are beyond the constitutional limits of legislative power, as well as those which are not, the courts will not attempt to separate them, but will hold the entire statute to be void, and it is insisted that this principle should be applied at this point to these cases. It is, however, conceived that, while the rule must apply to congressional enactments, there may be a difference where state laws are involved where there is a degree of necessity for confining the language used to state concerns,—the presumption being that the legislature, even by the use of language apparently the most general, does not intend to exceed its jurisdiction (End. Interp. St. § 169); but, without deciding the point, and assuming, as is probably fair, that the legislature only meant the act in question to refer to changes of freight rates on local commerce, it still seems to the court that it is subject to several objections which cannot be overcome:

First. If one railroad should be convicted by the commission of having been "guilty of extortion," and if a lower rate should consequently be fixed by it, such rate is prescribed for the guilty railroad alone, and for none of the others. The effect of the determination that the railroad has been guilty of extortion is individual. This being so, the others are still at liberty to charge, as proper, a rate which, if charged by the one thus convicted, would be deemed extortion; thus not merely inflicting a single penalty for a single offense, but placing the guilty railroad at the disadvantage of having a lower rate than its rivals, and depriving it of the equal protection of the laws. It cannot be just, it cannot be an equality of right or of protection, for an act to be unlawful if done by one railroad in Kentucky, and perfectly lawful if done by another railroad in the same state.

Second. The investigation of a complaint, and the decision thereon by the commission that the railroad complained of is "guilty of extortion," being the only way to put the act in motion, the railroad is entitled to first have a judicial determination of the question of its

guilt, before the rate can be lowered as a penalty for the act charged to have been committed. The commission cannot judicially, nor by due process of law, determine the one question upon which its right to fix a lower rate must depend. This is emphasized by the absence of any precise statutory standard by which the commission is to be guided as to what is an extortionate charge. The railroads have the inherent right to charge and collect a just and reasonable rate. Nothing short of a judicial proceeding conforming to due process of law, which not only includes due notice to the company interested, but a tribunal legally competent to act, can find a railroad guilty of extortion, as a basis for imposing the arbitrary penalty of lowering their customary rates, and as furnishing a stepping stone to ulterior penalties of great severity, which it is the obvious purpose of the act to have inflicted. The legislature may delegate to a commission power to establish rates generally, but not the power to try an individual railroad for an offense, and lower its rates, alone, as the penalty of such conviction.

Third. The most prominent feature of this legislation is the manifest purpose, if possible, to regulate rates by severe punishments for single offenses, rather than by means of real attempts to solve the immense problem of fair and reasonable freight and passenger charges, by industrious and earnest efforts to ascertain what they should be. But, even if the spirit of the statute be extreme and harsh, rather than moderate and fair, this would be unavailing to the complainants, if the provisions of the act had been kept within constitutional bounds. As already indicated, the act does not fix nor attempt to fix, nor require the fixing of, rates equally and generally for all. It aims alone at single instances, and, as a condition precedent to the right of the commission to make any change in any existing rate, it requires that the commission shall find the railroad guilty of extortion, without defining in any precise sense what that is. Of the hearing upon the charge before the nonjudicial administrative body, a species of notice and an opportunity to be heard as to the reasonableness and justness of the rates is given. But all that is thus done is preliminary to having a justification for the further step, if the railroad charges an excess rate over that thus fixed, of having it convicted of another and further extortion, without any provision in the act that the judicial tribunal which shall try the accused for that offense may investigate and decide whether the rate fixed in this extraordinary preliminary proceeding before the administrative body was reasonable or just. No opportunity for such an investigation is afforded by the statute when the courts are given jurisdiction of the cases, and it is by no means certain that those courts would feel constrained to give the relief in the absence of an express statutory requirement. These considerations, therefore, seem to bring this case within the principle first above quoted from the opinion of the supreme court in the Minnesota case. If it had been the intention of the legislature to recognize the right to a judicial investigation of the reasonableness of the rates fixed under the provisions of the act, and to afford an opportunity therefor before a conviction upon an indictment for extortion, it would have said so in unmistakable terms, in order that

the accused might not be left to the doubtful chances of mere construction, not only as to the existence of that right, but as to the competency of a criminal court in a criminal case, without a commissioner or adequate equipment to enforce it. It is indeed manifest from the entire scope and plan of the enactment, and its operation upon mere isolated cases only, that it was the purpose to exclude all inquiry upon that subject after the commission had acted, and to enforce by rigorous and extravagant penalties the rates thus fixed, however reasonably and earnestly the railroad might desire to promptly have the question of the justness of those rates finally determined by a judicial inquiry. Upon the principles so often and so emphatically announced by the supreme court, this purpose thus plainly written in the legislation must be fatal to its validity. It is fair to say generally that a railroad should take the penal consequences of charging unlawful rates, but until the customary rates fixed by itself are lawfully and constitutionally changed by the state, or through its agencies, the carrier should not be punished for collecting its own. It may illustrate the subject to inquire whether punishments ought to await a final determination of what are just and reasonable rates, or whether their infliction should begin at once, with the possibility or probability of being entirely unconstitutional. Justice obviously dictates the former course, particularly as the latter might turn out to be utter spoliation. Viewing the act as a whole, and considering the only modes by which it can be put into operation, the court is of opinion that those modes are not due process of law, and that its enforcement would deprive the railroad company of the constitutional guaranty of its rights secured by the fourteenth amendment.

Fourth. And it may be that the principles announced by the court of appeals in Louisville & N. R. Co. v. Com., 99 Ky. 132, 35 S. W. 129, 33 L. R. A. 209, by which section 816 of the Kentucky Statutes, which made it an offense for a carrier to charge more than a "just and reasonable rate," was held to be void for uncertainty, would apply in this connection, particularly as the act before us is supposed to attempt to supply what that decision held to be lacking. It seems to the court that, viewed in the light of the suggestions already made, the act in question is quite subject to some of the criticisms made upon section 816.

Fifth. As applying especially to the Louisville & Nashville Railroad Company, the court is further of opinion that the act cannot be maintained, because, without attempting directly, and probably not at all, to repeal the provision of the charter of that company as to maximum rates, it still leaves it within the power of the commission to make it a crime for that railroad to charge the rates which its charter expressly authorizes. Again, it is not to be inferred that, even if the charter of this company can be amended, it was done by implication by the act before us. And still again, as the charter of that company was passed before 1856, when the general law was first enacted, reserving to the state the power thereafter to amend all charters of corporations, it probably cannot be changed at all without its consent, which it is not pretended has been given. But, whether so or not, it can only be done, if at all, by language which

is plain and unmistakable, and not merely by so doubtful an implication as is presented here.

Sixth. As to the case of the Chesapeake & Ohio Company: This court has jurisdiction of that action, also, by reason of the diverse citizenship of the parties to it, and, in the absence of any construction of the act by the court of appeals of Kentucky, must construe it for itself; and the court is of the opinion that the act violates the constitution of the state, in attempting to confer upon the commission what are judicial powers and functions, to wit, the power, after complaint and notice given, to "hear and determine" that the railroad has been "guilty of extortion," and, as a consequence, after that finding, to further decide that the freight rate of that road for similar services shall be a lower figure. These steps, as they apply only to individual instances, and are not a method of fixing rates generally, constitute the very essence of a judicial proceeding and judgment. Indeed, this ground of relief may possibly broaden out so as, per se, to aid all the others.

The court is always reluctant to interfere with the exercise by any state officer of his official functions, but, in the most eminent degree, the safety of the property and the rights of the citizens of the community depend upon the supremacy of the constitution. The value of these safeguards is not diminished because individuals associate as a body corporate. They are citizens, none the less, and the court must not shrink in clear cases from discharging its plain duty to uphold the dominant authority. If, as before intimated, the act in question only empowered the commission to fix rates generally, and for all alike, which would be a mere administrative work, the court would not interfere until that power had been exercised, and the propriety of the result called in question; but here not only may a rate in a single instance be fixed by a process plainly unconstitutional, but the most serious, not to say excessive, punitive consequences may be visited, not only upon the railroad, but also upon the individual citizen whom it may employ. If any citizen or employé were in the meantime fined and imprisoned for nonpayment of the fines, he might be quite beyond adequate remedy, even if thereafter the question as to this legislation should be judicially and finally determined in accordance with the views we have expressed. Who, for example, is to compensate him for the confinement in jail? Pending this litigation the fining and imprisonment may go on by means of judicial processes entirely beyond the reach of this court if an injunction pendente lite is, at the threshold, refused. This court cannot, except in bankruptcy matters, enjoin a proceeding in a state court. While in a criminal case under the act it might by careful practice be possible to get to the supreme court of the United States, the effort would be most tedious and expensive, and there might be a great multiplicity of cases growing out of numerous separate changes of rates. It seems, therefore, better, pending a final adjudication of these most important questions, to prevent the possibility of irreparable injury to any one by an adequate order. An injunction pendente lite is granted in each case.