MICHIGAN CENTRAL RAILROAD CO. *v.* WAYNE CIRCUIT
JUDGE.

1. PRELIMINARY INJUNCTIONS—DISCRETION OF COURT.

Where, on petition of certain railroad companies for a writ of mandamus to compel the trial court to issue a temporary injunction restraining the Michigan railroad commission from enforcing its order relative to excess baggage rates, under Act No. 312, Pub. Acts 1907, pending a judicial determination of its validity, it appeared, in the trial court and in this court, by concession of counsel, that said rates are not confiscatory, but afford some remuneration over and above expenses; that petitioners were afforded a full hearing before the commission, but refrained from furnishing any information concerning the same; that they had not, under said law, applied to the commission to change the rates so fixed; and that said roads operating in part in another State were there, without protest, charging a much lower average rate than that fixed by the commission. *Held*, on such showing, it was not an abuse of discretion to deny the writ.

2. CARRIERS — RAILROAD COMMISSION — FIXING RATES — DISCRIMINATION.

Under section 16, Act No. 312, Pub. Acts 1907, the rates fixed by the commission are maximum rates, and do not prevent railroads from fixing lesser rates, provided there is no discrimination or rebating. And between competing points roads having the longer haul may charge the same rates as roads having a shorter haul.

3. SAME—CONSTITUTIONAL LAW— RAILROAD COMMISSION — FIXING RATES—POWER OF COURTS.

Under section 26, Act No. 312, Pub. Acts 1907, the power conferred upon the courts is solely to determine the reasonableness of the rates fixed by said commission, and if it is judicially determined that the rates so fixed are unreasonable, the court has not authority to determine what are reasonable rates, but will refer the question back to the commission to establish other rates.

4. PRELIMINARY INJUNCTION — NOT ALLOWED AS MATTER OF LAW.

Where, under said act, provision is made for a speedy remedy

for parties claiming to be aggrieved by the order of said commission, by a resort to a court of equity, and such suit given precedence in the circuit and this court over all other cases, and the trial judge is expressly by said statute given power and discretion to determine whether a preliminary injunction should issue pending a hearing upon the merits, complainants are not, as a matter of law, entitled to the issuance of the writ.

Mandamus by the Michigan Central Railroad Company and others to compel Alfred J. Murphy, circuit judge of Wayne county, to vacate an order denying a temporary injunction. Submitted April 13, 1909. (Calendar No. 23,293.) Writ denied April 29, 1909.

*McPherson, Bills & Streeter* (*O. E. Butterfield, James H. Campbell*, and *L. C. Stanley*, of counsel), for relators.

*John E. Bird*, Attorney General, *George S. Law*, Assistant Attorney General, and *Maybury, Lucking, Emmons & Helfman*, for respondent.

In 1907 the legislature passed an act entitled:

"An act to regulate railroads and the transportation of persons and property in this State, prevent the imposition of unreasonable rates, prevent unjust discrimination, insure adequate service, create the Michigan Railroad Commission, define the powers and duties thereof, and to prescribe penalties for violations hereof." Act No. 312, Pub. Acts 1907.

The following sections of the act are involved in the motion now before us:

"SEC. 16. If any common carrier or any agent or officer thereof, shall directly or indirectly, by any special rate, rebate, drawback, or by any means of false billing, false classification, false weighing, or by any other device whatsoever, charge, demand, collect or receive from any person, firm or corporation, a greater or less compensation for any service rendered or to be rendered by it for the transportation of persons or property or for any ser-

vice in connection therewith than that prescribed in the public tariffs then in force, or established as provided herein, or than it charges, demands, collects, or receives from any other person, firm or corporation for a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, or shall knowingly and wilfully assist or wilfully suffer and permit such greater or less compensation to be charged, demanded, collected or received, such railroad shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful, and upon conviction thereof shall pay into the State treasury not less than one hundred dollars nor more than one thousand dollars for each offense, and any agent or officer offending shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars for each offense, or imprisonment in the county jail for a term not to exceed three months or both in the discretion of the court.   It shall be unlawful for any common carrier to demand, charge, collect, or receive from any person, firm or corporation a less compensation for the transportation of property or for any service rendered or to be rendered by said railway in consideration of said person, firm or corporation furnishing any part of the facilities incident thereto:   *Provided*, Nothing shall be construed as prohibiting any railroad from procuring any facilities or service incident to transportation and paying a reasonable compensation therefor.   *   *   *

"SEC. 22. (*a*) Upon complaint of any person, firm or corporation or association, or any mercantile, agricultural or manufacturing society, or of any body politic or municipal organization, that any of the rates, fares, charges or classifications, or any joint rate or rates are in any respect unreasonable or unjustly discriminatory, or that any regulation or practice whatsoever affecting the transportation of persons or property, or any service in connection therewith, are in any respect unreasonable or unjust, discriminatory, or that any service is inadequate, the commission may notify the railroad complained of that complaint has been made, and twenty days after such notice has been given the commission may proceed to investigate the same as hereinafter provided.   Before proceeding to make investigation the commission may give the railroad and the complainants ten days' notice of the time and

place where such matters will be considered and determined, and said parties shall be entitled to be heard and shall have process to enforce the attendance of witnesses. If upon such investigation the rate or rates, fares, charges or classifications, or any joint rate or rates, or any regulations, practice or service complained of shall be found to be unreasonable or unjustly discriminatory, or the service shall be found to be inadequate, the commission shall have power to fix and order substituted therefor such rate or rates, fares, charges or classifications as it shall have determined to be just and reasonable, and which shall be charged, imposed and followed in the future, and shall also have power to make such orders respecting such regulation, practice, or service as it shall have determined to be reasonable and which shall be observed and followed in the future.

"(b) The commission may, when the complaint is made of more than one rate or charge, order separate hearings thereon, and may consider and determine the several matters complained of separately and at such times as it may prescribe. No complaint shall of necessity at any time be dismissed because of the absence of direct damage to the complainant.

"(c) Whenever the commission shall believe that any rate or rates, or charge or charges may be unreasonable or unjustly discriminatory, or that any service is inadequate, and that any investigation relating thereto should be made, it may, upon its own motion, investigate the same. Before making such investigation, it shall present to the railroad a statement in writing, setting forth the rate or charge to be investigated. Thereafter, on ten days' notice to the railroad of the time and place of such investigation, the commission may proceed to investigate such rate or charge in the same manner and make like orders in respect thereto as if such investigation had been made upon complaint.

"(d) This section shall be construed to permit any railroad to make complaint of like effect as though made by any person, firm, corporation or association, mercantile, agricultural or manufacturing society, body politic or municipal organization. * * *

"Sec. 24. (a) Whenever, upon investigation made under the provisions of this act, the commission shall find any existing rate or rates, fares, charges or classification, or any joint rate or rates, or any regulation or

practice whatsoever affecting the transportation of persons or property, or any service in connection therewith, are unreasonable or unjustly discriminatory, or any service is inadequate, it shall determine and by order fix a reasonable rate, fare, charge, classification or joint rate to be imposed, observed and followed in the future in lieu of that found to be unreasonable or unjustly discriminatory, and it shall determine and by order fix a reasonable regulation, practice or service to be imposed, observed and followed in the future in lieu of that found to be unreasonable or unjustly discriminatory or inadequate, as the case may be, and shall make an order that the carrier shall cease and desist from such violation and shall conform to the regulation and practice so prescribed, and it shall cause a certified copy of each such order to be delivered to an officer of the railroad affected thereby, which order of its own force shall take effect and become operative twenty days after the service thereof, or at such later time as the commission may in any particular case direct. All railroads to which the order applies shall make such changes in their schedule on file as may be necessary to make the same conform to said order, and no change shall thereafter be made by any railroad in any such rates, fares or charges, or in any joint rate or rates, without the approval of the commission. Certified copies of all other orders of the commission shall be delivered to the railroads affected thereby in like manner, and the same shall take effect within such times thereafter as the commission may prescribe.

"(*b*) The commission may at any time, upon application of any person or any railroad, and upon notice to the parties interested, including the railroad, and after opportunity to be heard as provided in section twenty-two, rescind, alter or amend any order fixing any rate or rates, fares, charges or classifications, or any other order made by the commission, and certified copies shall be served and take effect as herein provided for original orders.

"SEC. 25. All rates, fares, charges, classifications and joint rates fixed by the commission and all regulations, practices and services prescribed by the commission shall be in force and shall be prima facie, lawful and reasonable until finally found otherwise in an action brought for the purpose pursuant to the provisions of section twenty-six of this act, or until changed or modified by the com-

mission as provided for in paragraph (*b*), section twenty-four, of this act.

"SEC. 26. (*a*) Any railroad or other party in interest, being dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within sixty days commence an action in the circuit court in chancery against the commission as defendant to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates fixed is unlawful or unreasonable, or that any such regulation, practice or service fixed in such order is unreasonable; in which suit the commission shall be served with a subpœna. The commission shall file its answer, and on leave of court any interested party may file an answer to said complaint, whereupon said action shall be at issue and stand ready for hearing upon ten days' notice by either party. All suits brought under this section shall have precedence over any civil cause of a different nature pending in such court, and the circuit court shall always be deemed open for the hearing thereof, and the same shall proceed, be tried and determined as other chancery suits. Any party to such suit may introduce original evidence in addition to the transcript of evidence offered to said commission, and the circuit courts in chancery are hereby given jurisdiction of such suits and empowered to affirm, vacate or set aside the order of the commission, in whole or in part, and to make such other order or decree as the courts shall decide to be in accordance with the facts and the law.

"(*b*) No injunction shall issue suspending or staying any order of the commission except upon application to the circuit court in chancery or to the judge thereof, notice to the commission having been given and hearing having been had thereon.

"(*c*) If, upon the trial of said action, evidence shall be introduced by the complainant which is found by the court to be different from that offered upon the hearing before the commission, or additional thereto, the court, before proceeding to render judgment, unless the parties in such action stipulate in writing to the contrary, shall transmit a copy of such evidence to the commission, and shall stay further proceedings in said action for fifteen days from the date of such transmission. Upon receipt of such evidence the commission shall consider the same,

and may alter, modify, amend and rescind its order relating to such rate or rates, fares, charges, classifications, joint rate or rates, regulations, practice or service complained of in said action, and shall report its action thereon to said court within ten days from the receipt of such evidence.

"(*d*) If the commission shall rescind its order complained of, the action shall be dismissed; if it shall alter, modify or amend the same, such altered, modified or amended order shall take the place of the original order complained of, and judgment shall be rendered thereon as though made by the commission in the first instance. If the original order shall not be rescinded or changed by the commission, judgment shall be rendered upon such original order.

"(*e*) Either party to said action, within sixty days after service of a copy of the order or judgment of the court, may appeal to the Supreme Court, which appeal shall be governed by the statutes governing chancery appeals. When the appeal is taken the case shall, on the return of the papers to the Supreme Court, be immediately placed on the calendar of the then pending term, and shall be brought to a hearing in the same manner as other cases on the calendar, or, if no term is then pending, shall take precedence of a different nature except criminal cases at the next term of the Supreme Court.

"(*f*) In all actions under this section the burden of proof shall be upon the complainant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable, as the case may be."

Acting under the authority of this law, four wholesale dealers in merchandise filed a petition before the State railroad commission, alleging that the railroads named therein charged unreasonable rates for excess baggage of their traveling agents in traveling from place to place over the roads, and prayed the commission to declare such rates unreasonable and excessive, and to fix and establish reasonable rates. The railroad companies were duly notified, a hearing was had, proofs taken, and on January 15, 1909, the commission determined that the rates and charges for excess baggage fixed by the railroad com-

panies were unreasonable and excessive, and established maximum and minimum rates per hundred pounds according to distances.

The order further provided that the companies should, on or before February 15, 1909, within 20 days after date of service of this order, make such changes in their schedule of rates as may be necessary to make such schedule conform with this order, and "permission to file tariffs on less than statutory notice will be granted by the commission in any case where such permission is necessary to enable any defendant herein to comply with the provisions of this order."

On February 13, 1909, the relators here filed a bill in chancery in the circuit court for the county of Wayne, praying that the above order of the commission be adjudged and decreed unlawful, unreasonable, and void, and that, pending a judicial determination of the validity of the order, the commission be enjoined from making said order effective and from commencing any proceedings to enforce compliance therewith. The relators asked for a preliminary injunction, which the circuit court in chancery refused. Relators thereupon filed their petition in this court for the writ of mandamus to compel the court below to grant a preliminary injunction until the case can be heard upon its merits upon pleadings and proofs.

This court thereupon granted an order to show cause, which order contains the following provision:

"And it is further ordered that, pending the further order of this court, said order of the Michigan railroad commission shall be suspended and all proceedings to compel compliance therewith stayed as to any of relators who shall, by a bond, with sufficient surety, to be filed with and approved by the clerk of this court, undertake to give to every shipper of excess baggage over its line, between points in Michigan, a receipt for the excess charges paid, showing the amount of excess baggage carried and the points of origin and destination, and, if said order of the Michigan railroad commission shall be judicially determined to be valid, redeem said receipts by paying to the

bearers thereof upon demand the amounts paid for the transportation represented by such receipts in excess of the amounts payable under the schedule of rates fixed by said order of the Michigan railroad commission. The Michigan railroad commission, as trustee for the holders of said receipts, shall be named as obligee in said bonds, and said order of the Michigan railroad commission shall not be suspended as to any of relators until its bond shall be approved and filed as above provided. The penalty of bonds filed by the Michigan Central Railroad Company and by the Pere Marquette Railroad Company, in compliance with this order, shall not be less than twenty thousand dollars, and the penalty of bonds filed by the other relators shall not be less than ten thousand dollars."

To this order to show cause the learned circuit judge returned that in his opinion the constitutional questions raised were better reserved for the final hearing of the cause; that counsel for the railroad companies did not complain upon the hearing before him that the rates fixed by the commission were confiscatory, but, on the contrary, admitted for the purposes of that hearing that the earnings would be remunerative for the services performed. He further returns as follows:

"This respondent did not deem petitioners entitled to any temporary injunction, since there was no claim before respondent that the rates fixed by the commission are confiscatory or unremunerative. The rates heretofore charged by petitioners being so admitted on said hearing to be exorbitant, this respondent was not of the opinion that the discretionary, temporary writ of injunction should be used to overturn a remedial order made by the legislative branch of the government, especially in view of the admissions made before respondent on that subject, as hereinbefore stated. * * *"

He further returned that—

"When the counsel for the railroad commission was proceeding before this respondent to argue the excessive character of the excess baggage charges of the petitioners herein, and that the schedule of rates fixed by the commission was amply remunerative, the counsel for the petitioners herein repeatedly, in open court, asserted that it

was unnecessary to argue that proposition, because they admitted for the purposes of said hearing that the rates fixed by the railroad commission were not confiscatory nor unremunerative.   *   *   *

"This respondent became convinced upon March 1, 1909, that the policy of the petitioners herein was one of obstruction, for the following reasons: By the admissions of their counsel, it appeared that at the public hearing had before the commission they had refrained entirely from putting in any testimony. When a tentative schedule of rates had been prepared and submitted to them by the commission, they still refrained from rendering any assistance to the commission in determining whether that schedule was reasonable and a fair one. The schedule having been adopted and promulgated, petitioners waited until the last available day, under the rule, before taking steps to obtain a postponement of the operation of the commission's order through the intervention of this court. This delay was coupled with the admission that up to February 17, 1909, no effort whatever had been made to prepare the schedule of tariffs required by the order; that, in spite of the claim made upon said last-mentioned day that the preparation of such a schedule was a prolonged task, said petitioners had by March 1, 1909, prepared a practicable schedule, thus demonstrating their failure to take steps to prepare such a schedule to be not only 'inexcusable negligence,' as it was characterized in respondent's opinion of February 17, 1909, but thereby also refuting one of the equitable grounds theretofore urged as entitling petitioners to a suspension of the order. The application presented upon March 1, 1909, was deferred until the latest day possible. From the attitude of the petitioners throughout, it thus appeared to respondent that the equities of the matters were not with them, and that the discretionary writ of preliminary injunction ought not to issue."

The sworn answer of the Michigan railroad commission was filed February 16th, and denied all the equities of the bill.

GRANT, J. (*after stating the facts*). 1. Are the relators, as a matter of law, entitled to a preliminary injunction? 2. If they are not, did the circuit judge abuse

the discretion, which the law places in him, in denying a preliminary injunction pending the hearing? These are the questions which we understand are now presented to this court. The second question is very readily answered in the negative. The relators conceded upon the hearing in the court below and in this court that the rates fixed by the commission are not confiscatory, but afford some remuneration over and above the expenses. They were accorded a full hearing before the commission, but chose to put in no testimony before it, and to furnish no information as a basis for the determination of just rates by the commission. The law expressly makes the rates fixed by the commission prima facie lawful and reasonable, and casts the burden of proof to the contrary upon the railroad companies contesting. Neither have they made application, as the law provides, to the commission to change the rates.

It further appears that the roads of these relators, with perhaps one exception, extend into the State of Indiana, and that for about two years they have been operating in that State under rates fixed by the act of the legislature, much lower on the average than those fixed by the commission in this case, and without any protest or attempt to test the validity of the rates. Under these circumstances, the relators have made no case appealing to the conscience of the court to exercise a discretion in their behalf.

Counsel for the relators attack certain provisions of the law (Act No. 312, Pub. Acts 1907) as unconstitutional:

(1) Section 16, in that it prescribes a punishment for failure to collect the rates fixed by the order of the commission pending a judicial determination of their validity; and also makes it an offense punishable by fine or imprisonment for the carrier to charge, demand, collect, or receive greater or less compensation than that prescribed in the order of the commission.

(2) In that the act confers upon the commission legislative and executive powers.

(3) Section 26, in that it confers upon the courts the power to establish rates, if those found by the commission are unlawful or unreasonable.

In view of the conclusion we have reached, to deny a preliminary injunction, and the fact that the relators must therefore proceed to adopt and charge the rates fixed by the commission until the final hearing on the merits, we will dispose of two of the questions above raised. The rates fixed by the commission and now attacked are maximum rates. The carriers may within those rates fix lesser rates, provided there is no discrimination or rebating. The statute is aimed to prevent discrimination and rebating, and not to prevent carriers from charging rates less than the maximum, provided they treat all their customers alike. It follows that between competing points, where the haul of one road is longer than that of the other, the one having the longer haul may charge the same rates as are charged by the one having the shorter haul.

We do not construe the provisions of this act to lodge in the courts the power to establish rates. The power conferred upon the courts is solely to determine whether the rates are confiscatory or unreasonable. If the courts should so find, they are not authorized to determine what are reasonable, but the matter must again be referred to the commission to establish other rates. If they are found to be reasonable, the courts will sustain the action of the commission. If, however, it should be determined that such power was conferred upon the courts and is unconstitutional, the act would still be held valid, because it could stand with that clause eliminated from the statute. Courts declare legislative enactments invalid only when they are able to determine from the act itself that the legislature would not in all probability have enacted the law with the objectionable features eliminated. This act expressly declares that, so long as the main purpose and object of the act can be sustained, any provision held void shall not affect its validity. We are not now prepared to hold that, if all the provisions which counsel for relators now attack should be held void, it would invalidate the entire law. Similar acts have been sustained by the courts of many of the States, and we prefer to reserve

this important question until the final hearing. We the more readily reach this conclusion because, from the record now before us, it does not appear that the relators are liable to be deprived of any of their rights.

Preliminary injunctions have been denied in similar cases by the Federal courts. *Capital City Gaslight Co.* v. *City of Des Moines,* 72 Fed. 829; *Tilley* v. *Railroad Co.,* 5 Fed. 641; *Chicago, etc., R. Co.* v. *Dey,* 38 Fed. 656; *In re Arkansas Railroad Rates,* 163 Fed. 141.

In this connection the case of *Ex parte Young,* 209 U. S. 123 (13 L. R. A. [N. S.] 932 ), has received due consideration. The facts in that case are so different from those in this, that we are of the opinion it does not control here. In that case the order complained of was made without a hearing. The law made every agent of the corporation violating its provisions guilty of a gross misdemeanor, punishable by a fine of not less than $2,500 nor more than $5,000 for the first offense, and not less than $5,000 nor more than $10,000 for each subsequent offense, and imposed a like penalty upon the corporation. By another act involved in that case any officer, agent, or representative of the corporation violating any provision of the act was made guilty of a felony, punishable by a fine not to exceed $5,000, or by imprisonment in the State prison for a period not exceeding five years, or both. It was held that the purpose and the effect of the law was to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, and that "the result is the same as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its rights." We cannot hold that the penalties provided in the law now before us are within the condemnation of that case. The statute of Michigan provides for a hearing before the commission, and for giving notice of such a hearing to all the railroad companies to be affected thereby.

A petition by proper parties in accordance with the law was presented to the commission, setting forth the facts

and reasons for claiming that the rates were exorbitant. Due notice was served, and the parties appeared; the commission took testimony, and gave the relators ample opportunity to produce evidence and present their views. Various hearings were had, the commission deliberated six months, and no reason appears upon this record for believing that this important body did not exercise their best judgment in fixing the rates. Usually laws of this character are enforced by providing penalties, and those wishing to determine the validity of such a law violate its provisions and test the question in a suit at law, as was done in *People* v. *Railway Co.*, 116 Mich. 132.

The act here in question provides for a speedy remedy for parties, claiming to be aggrieved by the order of the commission, by a resort to a court of equity, and provides for an expeditious hearing. Such suit is given precedence both in the circuit and Supreme courts over all other cases. The bill in this case was filed February 13th, and answer filed the 16th of February. We find no good reason appearing upon this record why the case could not have been heard in the court below and a final determination had in this court within 60 days from the time of filing the bill. More than that time has already elapsed since the answer to the bill was filed. There is no attempt by this law to prevent a judicial determination upon the action of the commission. On the contrary, every reasonable facility is offered to parties complaining for a prompt appeal to the courts. The facts and enactment in this case bear little resemblance to the facts and the enactment in *Ex parte Young*. The legislature has expressly lodged in the circuit court in chancery the power and discretion to determine whether in a given case a preliminary injunction should issue pending the hearing upon the merits. We do not think the relators, as a matter of law, are entitled to the preliminary injunction.

Notwithstanding the strictures made by counsel for the respondent upon the action of the relators and their coun-

sel, it may be fairly assumed that relators and their counsel have acted in good faith and in reliance upon what they conceived to be their right.   It may therefore be possible that the relators should have a brief additional time within which to prepare their schedules and comply with the order of the commission.

The writ of mandamus is therefore denied, and the case remanded to the circuit court with leave on the part of the relators to apply to that court for such additional time.

BLAIR, C. J., and MONTGOMERY, MCALVAY, and BROOKE, JJ., concurred.