MICHIGAN CENTRAL RAILROAD CO. *v.* MICHIGAN RAILROAD COMMISSION.

1. CONSTITUTIONAL LAW — RAILROAD COMMISSION — DEPARTMENTS OF GOVERNMENT — DELEGATION OF LEGISLATIVE FUNCTIONS — ADMINISTRATIVE ACTS.

   The action of a railroad commission in fixing rates is not legislative but administrative or ministerial in character.

2. SAME.

   An attempt by the legislature to delegate purely legislative functions to a commission would be unconstitutional.

3. SAME—STATUTES.

   Act No. 312, Pub. Acts 1907, creating a railroad commission with power to fix maximum rates is not in contravention of section 2 of article 4 of the Constitution of 1909, the duties of the commission in determining the reasonableness of rates being purely ministerial.

4. SAME—PRESUMPTIONS—BURDEN OF PROOF—EXCESS BAGGAGE—CARRIERS.

   Under the provision of the statute making the rate fixed by the commission *prima facie* reasonable and lawful, the burden rests on a railroad company to show by satisfactory evidence that the order of the commission determining a maximum charge for excess baggage is unreasonable.

5. SAME—RATES — REASONABLENESS — EVIDENCE — CARRIERS — EX-
CESS BAGGAGE.

Evidence showing, that wholesalers' traveling men carry 1,500
pounds of excess baggage, that the rates therefor were the
same for seven miles as for forty-five miles, that no addi-
tional expense was required to handle the baggage, that the
carriage would cost less for short than for long hauls, and that
the prior rates were arbitrary in character, justifies the or-
der of the State railroad commission in fixing new rules.

6. SAME—METHOD OF FIXING RATE—MILEAGE.

A change by the commission of the method of fixing rates
from the amount of fare to mileage, does not invalidate the
order, although it may result in temporary inconvenience to
the company.

Appeal from Wayne; Murphy, J. Submitted January
18, 1910. (Docket No. 116.) Decided March 19, 1910.

Bill by the Michigan Central Railroad Company and
others to enjoin the Michigan railroad commission from
enforcing certain excess baggage rates. From a decree
dismissing the bill, complainants appeal. Affirmed.

*McPherson, Bills & Streeter* ( *O. E. Butterfield,
James H. Campbell,* and *L. C. Stanley,* of counsel), for
complainants.

*John E. Bird,* Attorney General, and *Lucking, Em-
mons & Helfman,* for defendant.

STONE, J. Many of the questions presented in this rec-
ord were before this court in *Michigan Cent. R. Co.* v.
*Wayne Circuit Judge,* 156 Mich. 459 (120 N. W. 1073).
The complainants here were the relators there. Upon the
filing of the bill in this cause they had asked for a prelim-
inary injunction to restrain the defendant, the Michigan
railroad commission, from making its order establishing
rates, after a full hearing, effective pending the litigation.
This was refused by the circuit judge, whereupon relators
filed their petition in this court for the writ of mandamus
to compel the circuit judge to grant a preliminary injunc-

tion until the case could be heard upon its merits on pleadings and proofs. This court thereupon granted an order to show cause. The writ was denied by this court. The sworn answer of the defendant denying all the equities of the bill had been filed when that case was here. Since the matter was here before, a general replication has been filed, and the cause has been heard upon its merits. It is significant, however, that at the hearing the complainants offered no evidence other than that which had been taken by and before the commission. So the case is not substantially different in its facts from that presented to us on the former occasion. On that occasion, after quoting largely from Act No. 312, Pub. Acts 1907, Justice GRANT, among other things, said:

"These rates, fixed by the commission and now attacked, are maximum rates. The carriers may within those rates fix lesser rates, provided there is no discrimination or rebating. The statute is aimed to prevent discrimination and rebating, and not to prevent carriers from charging rates less than the maximum, provided they treat all their customers alike. It follows that between competing points, where the haul of one road is longer than that of the other, the one having the longer haul may charge the same rates as are charged by the one having the shorter haul.

"We do not construe the provisions of this act to lodge in the courts the power to establish rates. The power conferred upon the courts is solely to determine whether the rates are confiscatory or unreasonable. If the courts should so find, they are not authorized to determine what are reasonable, but the matter must again be referred to the commission to establish other rates. If they are found to be reasonable, the courts will sustain the action of the commission. If, however, it should be determined that such power was conferred upon the courts, and is unconstitutional, the act would still be held valid, because it could stand with that clause eliminated from the statute. Courts declare legislative enactments invalid only when they are able to determine from the act itself that the legislature would not in all probability have enacted the law with the objectionable features eliminated. This act expressly declares that, so long as the main purpose and ob-

ject of the act can be sustained, any provision held void shall not affect its validity. We are not now prepared to hold that, if all the provisions which counsel for relators now attack should be held void, it would invalidate the entire law. Similar acts have been sustained by the courts of many of the States, and we prefer to reserve this important question until the final hearing. * * *

"A petition by proper parties, in accordance with the law, was presented to the commission, setting forth the facts and reasons for claiming that the rates were exorbitant. Due notice was served and the parties appeared, the commission took testimony, and gave the relators ample opportunity to produce evidence and present their views. Various hearings were had, the commission deliberated six months, and no reason appears upon this record for believing that this important body did not exercise their best judgment in fixing the rates. Usually laws of this character are enforced by providing penalties, and those wishing to determine the validity of such a law violate its provisions, and test the question in a suit at law, as was done in *People* v. *Railway Co.*, 116 Mich. 132 (74 N. W. 520). The act here in question provides for a speedy remedy for parties claiming to be aggrieved by the order of the commission, by a resort to a court of equity, and provides for an expeditious hearing. Such suit is given precedence both in the circuit and Supreme courts over all other cases."

We have thus quoted, perhaps at unnecessary length, from the opinion of Justice GRANT, because it appeared there, as it did upon this hearing, that the rates fixed by the commission are not confiscatory, but afford some remuneration over and above expenses, and because the law expressly makes the rates fixed by the commission *prima facie* lawful and reasonable, and casts the burden of showing the contrary upon the railroad companies contesting, who are the complainants here. While the holding of this court in the mandamus proceeding may not be *res judicata*, yet it shows clearly the view held at that time as to the law of the case. It appears by the settled case on appeal that at the hearing counsel for the complainants advised the court that they would submit the case upon the record made at the hearings before the Michigan rail-

road commission, and would offer in support of the allegations of the bill of complaint no other evidence. The certified proceedings before the railroad commission were thereupon offered and received in evidence. This testimony was voluminous, and with the exhibits covers about 200 pages of this record. We have carefully read the testimony, as well as the arguments before the commission, and its opinion.

It is the claim of complainants:

"(1) That Act No. 312, Pub. Acts 1907, violates the provisions of section 2, art. 4, of the Constitution of Michigan (1909), because it confers upon the railroad commission both legislative and executive powers. (a) The power of prescribing rates to be applied in the future, and of establishing regulations for the future conduct of business, is legislative. (b) The duty of enforcing the law and making investigations to determine whether or not existing laws are being violated is beyond doubt an executive function.

"(2) The Michigan railroad commission's order, dated January 15, 1909, is void, because it is not supported by any evidence that complainants' rates are unreasonable."

The learned circuit judge held that the question of the constitutionality of the act is not properly raised in this case, because the order complained of is purely legislative in character. He said in his opinion on the final hearing:

"Concededly the rate-making power is a legislative prerogative. The only authority exercised by the defendant in any of its acts involved in this controversy is accordingly legislative in character, since the conduct questioned relates exclusively to the promulgation of a new schedule of rates. If, then, it be assumed, for the mere purpose of clarifying the situation, that other duties, executive in character, are sought to be conferred upon the commission by the statute, what effect, if any, has such an assumption upon the pending issue, since the performance of any such duties, or the exercise of any power incidental to them, are in no wise involved in the proceedings of the commission here in issue?

"In answering this question the legislative intent, evi-

denced in section 50 of the act, is of vital, and, I think, of controlling, importance.   That section provides that:

" 'Each section of this act and every part of each section is hereby declared to be an independent section and part of a section, and the holding of any section or part thereof to be void and ineffective for any cause shall not be deemed to affect any other section or any part thereof.'

" Eliminating, as executive in character, the provisions by which the enforcement, both of statutory requirements and of its own orders and regulations, is made the duty of the commission, and discarding similarly other features vesting in it for enumerated purposes the power to make certain defined appointments, the legislative purpose to enact the remaining provisions, under which the commission has proceeded herein, is made distinct and emphatic by the language just quoted.   It is a familiar rule of construction that any unconstitutional feature of an act will not of itself invalidate the entire enactment, where it appears that, without the invalid provision, the legislature would have passed the remaining and valid sections.   The sections claimed to be constitutionally defective are not germane, since they have not been invoked herein by the commission.   There is the formal declaration of the legislature that, if these sections be void, the remaining sections here relied upon would yet have been enacted.   It follows that the objection is not tenable; for, if well taken, it does not destroy that authority conferred upon the commission which has been exercised herein.   It is obvious that in what has been said no intimation is conveyed that the constitutional objection urged is in law sound.   That question should be left for consideration when properly raised."

1. In view of the peculiar language of section 50, above quoted, there is much force in the position of the circuit judge.   But we prefer to place our decision upon the proposition that, under the act in question, the duties of the Michigan railroad commission are neither purely legislative nor executive, but that they are ministerial in their character.   The following cases bear more or less upon this question:  *People* v. *Board of Supervisors of Ingham Co.,* 20 Mich. 95; *Attorney General* v. *Common Council of Detroit,* 29 Mich. 108; *Feek* v. *Bloomingdale*

*Township Board*, 82 Mich. 393 (47 N. W. 37, 10 L. R. A. 69); *Turner* v. *City of Detroit*, 104 Mich. 326 (62 N. W. 405); *Hurst* v. *Warner*, 102 Mich. 238 (60 N. W. 440, 26 L. R. A. 484, 47 Am. St. Rep. 525); *Attorney General* v. *Bolger*, 128 Mich. 355 (87 N. W. 366); *Albert* v. *Gibson*, 141 Mich. 698 (105 N. W. 19). It is said in the case last above cited:

"It is well settled that the statutes must be so construed as to render them constitutional, if such construction is reasonably possible."

See, also, *McCall* v. *Calhoun Circuit Judge*, 146 Mich. 319 (109 N. W. 601).

The distinction between what is constitutional and unconstitutional is clearly pointed out by Justice Carpenter in *King* v. *Insurance Co.*, 140 Mich. 268 (103 N. W. 620). He there quotes language from *Locke's Appeal*, 72 Pa. 498 (13 Am. Rep. 716), as follows:

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact, or state of things, upon which the law makes, or intends to make, its own action depend."

It is held not to be an unauthorized delegation of power for the legislature to authorize a board of railway commissioners to provide reasonable rules and regulations in respect to fixing transportation tariffs. 6 Am. & Eng. Enc. Law (2d Ed.), p. 1030, and note 14, citing cases. The grant of authority to various officers and boards to prescribe rules, etc., in certain cases has been held not to be a delegation of legislative authority. 8 Cyc. p. 832 *et seq.*, and cases cited. Commissions of the character we are considering in this case are now as much an integral and indispensable part of our governmental system as any other of our administrative bodies, with the exception of the legislature itself. It is now quite uniformly held by the courts that the action of such a body in fixing a rate is not a legislative act upon its part, but is only administrative or ministerial in its function, in putting into effect

the legislative will which has been previously declared by the legislature. If the legislature were to attempt to delegate a purely legislative power to a commission, it would be unconstitutional, as in fact this court has repeatedly held. It is unnecessary to point out the cases. But the legislative will is declared when the law is passed, affirming that all rates shall be reasonable and just. This is done by the legislature itself. The work of the commission making the investigation upon the facts, and declaring what is a reasonable and what is an unreasonable rate, is by the courts held to be simply administrative of the law as previously enacted by the legislature. It is held that the functions and duties of such commissions are administrative or ministerial, and neither legislative, executive, nor judicial. 2 Elliott on Railroads (2d Ed.), § 675.

In *Reagan* v. *Trust Co.*, 154 U. S. 362 (14 Sup. Ct. 1047), the court said:

"Passing from the question of jurisdiction to the act itself, there can be no doubt of the general power of a State to regulate the fares and freights which may be charged and received by railroads or other carriers, and that this regulation can be carried on by means of commission. Such a commission is merely an administrative board created by the State for carrying into effect the will of the State, as expressed by its legislation. *Railroad Commission Cases*, 116 U. S. 307 (6 Sup. Ct. 334, 388, 1191). No valid objection, therefore, can be made on account of the general features of this act, those by which the State has created the railroad commission and intrusted it with the duty of prescribing rates of fares and freights, as well as other regulations for the management of the railroads of the State."

In Beale and Wyman on Railroad Rate Regulation, § 1309, it is said, with reference to this question:

"It is much more convenient for the legislature to confer on a subordinate administrative body the power to fix rates than to do so itself. This has been done in England by placing the power in the board of trade, one of the executive or rather administrative departments of the government. In this country, the power has, in the last quarter

century, not infrequently been referred to an administrative commission.  The reason for delegating the power of fixing rates in detail to a commission has never been better expressed than by Mr. Justice Brewer:

" ' The reasonableness of a rate changes with the changed condition of circumstances.  That which would be fair and reasonable today, six months or a year hence may be either too high or too low.  The legislature convenes only at stated periods; in this State once in two years.  Justice will be more likely done if this power of fixing rates is vested in a body of continual session than if left with one meeting only at stated and long intervals.  Such a power can change rates at any time, and thus meet the changing conditions of circumstances.  While, of course, the argument from inconvenience cannot be pushed too far, yet it is certainly a matter of inquiry whether, in the increasing complexity of our civilization, our social and business relations, the power of the legislature to give increased extent to administrative functions must not be recognized.'  *Chicago, etc., R. Co.* v. *Dey*, 35 Fed. 866, 875 (1 L. R. A. 744)."

Also in section 1319:

"It has already been seen that the rate-making power may be delegated to a subordinate body, whether municipal corporation or commission; and this is not unconstitutional as a delegation of legislative power.  The legislative act of requiring the rates to be reasonable is either the act of the common law, or is part of the act by which the delegation of authority is conferred.  The functions of such bodies in determining and fixing reasonable rates are administrative rather than legislative.  The authority conferred on them relates merely to the administration in practice of the general rules laid down by the common law and by the legislature.  So in the *Railroad Commission Cases* (116 U. S. 307, [6 Sup. Ct. 334]), the legality of the action of the Mississippi legislature in creating a railroad commission with power to fix rates was involved.  The rate so fixed could be enforced in the courts, unless the courts should find it unjust.  The delegation of the rate-fixing power to a commission in this way was held to be constitutional."

In Noyes on American Railroad Rates, p. 206, the author says, with reference to State regulation of railroad rates:

"The legislature cannot delegate its power to make

laws. Statutes can be enacted only by the agency created by the constitution for the purpose. But when the legislature has adopted general rules, it may delegate the power to apply them to specific facts, and to exercise discretion in respect thereto. A commission may be created to perform legislative functions of a *quasi* administrative character. When the legislature has declared that railroad rates shall be reasonable and just, it may authorize a commission to fix the specific charges. Any other conclusion would practically prevent the legislature from exercising its power to make rates. The country is so large, the railroads so numerous, and conditions so variable and changeable, that direct rate making by the legislature, with annual or biennial sessions, would be wholly out of the question. Moreover, legislatures are not adapted to pass upon the matters of detail necessary in making rates.

"Laws have, therefore, been adopted in several States conferring upon commissions power to prescribe rates for railroad services. These laws have been sustained by the Supreme Court of the United States. * * *

"When a commission, in the exercise of power delegated by the legislature, makes a rate, the result is the same as if the legislature directly acted. The act of the commission supplements and makes effective the act of the legislature. The rate resulting from the joint action of the legislature and its agent is the law. Making a rate in legal effect is making a law that such shall be the rate."

The authorities upon the question are extensively reviewed in the case of *State, ex rel. Taylor,* v. *Railway Co.,* 76 Kan. 467, 481 (92 Pac. 606, 611), where the court said:

"In fact the power of the legislature to delegate merely administrative functions in this manner has been so thoroughly established in the several States, and so often held by the Federal Supreme Court to apply to acts of congress, that the question is no longer an open one. The latest utterance of the United States Supreme Court upon the subject is in the case of *Atlantic Coast Line R. Co.* v. *Corporation Com'n,* 206 U. S. 1 (27 Sup. Ct. 585), in which Mr. Justice White, speaking for the court, uses the following language:

" 'The elementary proposition that railroads, from the public nature of the business by them carried on, and the interest which the public have in their operation, are subject, as to their State business, to State regulation, which may be exerted either directly by the legislative authority or by the administrative bodies endowed with power to that end, is not and could not be successfully questioned, in view of the long line of authorities sustaining that doctrine.' "

See, also, *Minneapolis, etc., R. Co.* v. *Railroad Com'n*, 136 Wis. 146 (116 N. W. 905, 17 L. R. A. [N. S.] 821).

An examination of the provisions of the railroad commission act in force in this State will demonstrate clearly that the commission as such has no power to legislate for the railroads of the State. The legislature by the terms of the act had declared what shall be the law affecting the various railroads, and merely conferred upon the commission authority to administer the laws passed by the legislature. The rights of the railroad companies are carefully guarded by the provisions for hearings in all cases before any order is made, and provisions for the review of such orders by the courts. It is difficult to see how, in view of the long line of authorities sustaining the constitutionality of similar acts, the court can say that this law in its general features is invalid. As to the constitutionality of laws of this character generally, we cite the following authorities: *Chicago, etc., R. Co.* v. *Minnesota*, 134 U. S. 418 (10 Sup. Ct. 462, 702); *Reagan* v. *Trust Co.*, 154 U. S. 362, 393, 394, 397 (14 Sup. Ct. 1047); *Smyth* v. *Ames*, 169 U. S. 526 (18 Sup. Ct. 418); *Tilley* v. *Railroad Co.*, 5 Fed. 641; *Chicago, etc., R. Co.* v. *Dey*, 35 Fed. 866 (1 L. R. A. 744); *McWhorter* v. *Railroad Co.*, 24 Fla. 417 (5 South. 129, 2 L. R. A. 504, 12 Am. St. Rep. 220); *Storrs* v. *Railroad Co.*, 29 Fla. 617 (11 South. 226); *Georgia Railroad* v. *Smith*, 70 Ga. 694, 71 Ga. 863; *Chicago, etc., R. Co.* v. *Jones*, 149 Ill. 361 (37 N. E. 247, 24 L. R. A. 141, 41 Am. St. Rep. 278); *State* v. *Railway Co.*, 38 Minn. 281, 298 (37 N. W. 782); *State* v. *Railway Co.*, 40 Minn. 156 (41 N. W. 465); *Stone* v. *Trust Co.*,

116 U. S. 307 (6 Sup. Ct. 334, 388); *People* v. *Harper*, 91 Ill. 357; *Atlantic Express Co.* v. *Railroad Co.*, 111 N. C. 472 (16 S. E. 393, 18 L. R. A. 393, 32 Am. St. Rep. 805); *Interstate Commerce Com'n* v. *Railway Co.*, 167 U. S. 479, 496 (17 Sup. Ct. 896); *Louisville, etc., R. Co.* v. *McChord*, 103 Fed. 216; *Western Union Tel. Co.* v. *Myatt*, 98 Fed. 335; *State* v. *Johnson*, 61 Kan. 803 (60 Pac. 1068, 49 L. R. A. 662); *Steenerson* v. *Railway Co.*, 69 Minn. 353 (72 N. W. 713); *Chicago, etc., R. Co.* v. *Winnett*, 162 Fed. 242 (89 C. C. A. 222); *Atlantic Coast Line R. Co.* v. *Corporation Com'n*, 206 U. S. 1 (27 Sup. Ct. 585).

We repeat that no power to make a law or do a purely legislative act is conferred, or attempted to be conferred, by the act in question. The duties are purely administrative of the law as established by the legislature.

Our attention has been called to the recent case of *Oregon Railroad & Navigation Co.* v. *Campbell*, 173 Fed. 957, in the United States circuit court, district of Oregon. This is a well-considered case, holding that the railroad commission act of Oregon, which requires every railroad to charge reasonable and just rates, creates a State railroad commission, with power to determine in the first instance the reasonableness of rates charged, and, if found unreasonable, to fix rates which shall be *prima facie* reasonable and just, and shall be conformed to by the railroad company, with the right, however, to bring suit in a court of the State to determine their reasonableness, in which suit it shall have the burden of proof, *is not unconstitutional,* as conferring legislative, executive, and judicial functions on the commission, in violation of article 3, § 1, of the State constitution, providing that the powers of government shall be divided into three separate departments, legislative, executive, and judicial, and that, except as provided in the constitution itself, no person charged with official duties under one of these departments is competent to exercise any function of the other. It is there held that, in the constitutional division of the

powers of a State into legislative, executive, and judicial
departments, there can be no absolute line of demarcation
between the functions of such departments; and, where
it is scarcely ascertainable whether the several powers
conferred by a statute belong more properly to one or the
other departments, and their assignment to one works no
practical encroachment on the functions of another, the
fact that all such powers are vested in a single body or
tribunal, for practical reasons, will not invalidate the
statute.   In the above case all of the authorities cited by
counsel are referred to and reviewed, and the court con-
cludes:

"The legislature can fix rates upon traffic, but in their
establishment they must be reasonable.   If unreasonable,
the courts will declare them so.   In fixing such rates, an
investigation must necessarily precede the legislative ac-
tion; but the law declares that the legislature may fix
rates through a functionary called a 'commission,' and,
when the commission acts, it is as if the legislature had
fixed the rates.   But, like the rates established by the legis-
lature, if unreasonable, such rates are not binding upon
the transportation companies affected.   Recognizing this
condition, the act in question has provided a remedy
whereby the rates fixed may be judicially determined as it
respects their reasonableness.   The act of the commission
being valid *prima facie*, the rates fixed become a law
unto the carrier until a competent court declares them to
be unreasonable.   Just so with an act of the legislature
fixing rates, because no law fixing unreasonable rates can
bind the carrier.   I see no legal or constitutional objection
to the legislation proceeding in this way to a regulation of
rates and tariffs upon transportation lines within the
State.
"That the burden is cast upon the carrier of first re-
sorting to a court of justice for a determination of the rea-
sonableness of a rate, if he desires to contest the action of
the commission, rather than upon the commission to sue
if resistance to the rate ordered to be observed is made, as
provided in the interstate commerce act, is not a distinction
that differentiates the two acts in principle.   In either case
the carrier is given his day in a court of justice upon the
question of the reasonableness of the rate prescribed,

with the identical presumptions of law attending the controversy."

In view of the authorities above referred to, and of the rule that the courts will presume in favor of the constitutionality of a law until the contrary plainly appears, we conclude that the act in question is constitutional.

2. This brings us to the question as to whether or not there was any evidence before the commission tending to show that the rates theretofore in effect were unreasonable. It should be borne in mind that under the statute all the rates fixed by the commission are *prima facie* lawful and reasonable, and that the burden of proof was upon the railroads to show by satisfactory evidence that the order was unreasonable.   It was well said by the court in *Missouri, etc., R. Co.* v. *Interstate Commerce Com'n*, 164 Fed. 650:

"In approaching the consideration of a case like this, the court should start with the presumption that the order is valid, and was made after careful consideration and correct determination of every question of fact underlying it, and it should be accorded that respect and influence which ought to attend, and does attend, the action of a legislative or administrative board, whose members are, in point of ability, learning, and experience specially qualified to determine such matters.   In short, the burden of showing that the facts are such as to render the order invalid rests upon the carrier assailing it, and unless the case made on behalf of the carrier is a clear one, the order ought to stand."

There is no doubt that had the railroad companies offered in evidence before the commission many things that were peculiarly within their knowledge, the commission would have been greatly assisted.   But as they saw fit to offer no testimony there, nor on the hearing of the case, after a reading of the testimony offered before the commission, we are clearly of opinion that there was evidence before that body upon which it was justified in making the order.   There was evidence before the commission that the average trip of the wholesaler's traveling men,

carrying large quantities of excess baggage, was about 8 miles; that these trips had to be made often during the year; that each man carried an average of at least 1,500 pounds of excess baggage, and that the said railroads were charging as much for carrying his baggage 8 miles, or 7 miles, or 6 miles, or less, as if he traveled 45 miles. In other words, the charge was precisely the same for 2, 3, 5, 7, or 8 miles as for 45 miles. The proof showed, without any contradiction, that no additional men were required, no additional power, no additional expense, except occasionally an extra man at terminal points where large amounts of baggage were handled, like Detroit or Grand Rapids. Taking into consideration the expense of operating a train of cars, it is difficult to understand how it can cost the railroad company as much to carry baggage 6 or 8 miles as it does to carry it 45 miles. Certainly to carry it the shorter distance does not take as much time, nor as much fuel, nor as much space, for the space or room in the baggage car is relieved or vacated for other baggage. We think that it was proper to show by comparison that the rates for short hauls were unreasonable. *McMorran* v. *Railway Co.*, 3 Interst. Com. Com'n R. 261, 262. That a usual method of proof of unreasonable charges is by comparsion, see the following cases: *Interstate Commerce Com'n* v. *Railway Co.*, 85 Fed. 107; *Board of Trade* v. *Railway Co.*, 6 Interst. Com. Com'n R. 1, 22, 23; *Maricopa County Commercial Club* v. *Wells, Fargo & Co.*, 16 Interst. Com. Com'n R. 182; *Board of Railroad Com'rs* v. *Railway Co.*, 7 Interst. Com. Com'n R. 380; *Marten* v. *Railroad Co.*, 9 Interst. Com. Com'n R. 581; *Denison Light & Power Co.* v. *Railway Co.*, 10 Interst. Com. Com'n R. 337.

There was evidence showing that the former rates were unjust in that the increases were all arbitrarily 5 cents per hundred; that is, up to 45 miles 15 cents per hundred pounds; from 45 miles to 60 miles, 20 cents; from 60 to 75 miles, 25 cents, and so on, so that a traveler pays for

2,000 pounds excess, 45 miles $3, for 46 miles $4. Where his passenger fare increases but 2 cents his baggage charge increases $1. This would seem to be unreasonable, and it was remedied, at least in part, by the commission. As to claimed discrimination against small shippers, see *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19 (29 Sup. Ct. 192).

The last ground of complaint made by the complainants is that the rate fixed by the defendant is based upon mileage instead of upon the passenger fare. We are content with the treatment of this subject by the circuit judge, wherein he said:

"The rate for excess baggage heretofore in vogue was based upon a percentage of the first-class passenger fare in effect between the points, between which the baggage moves. Substantially the passenger was required to pay, per 100 pounds of his excess baggage, for all distances in excess of 45 miles, 16⅔ per cent. of the fare paid for his journey. This plan is in general use by the carriers of the country, outside of the movements of local baggage in the State of Indiana. In that State the baggage charge is placed upon a mileage basis. The commission has in its schedule adopted the mileage basis for establishing and computing the rate in this State. It is urged that this is unreasonable, in that it will entail much inconvenience upon the traveling public. The plan of computation is surely discretionary, provided, always, that there be no abuse of discretion. To base the charge for carrying property directly upon the distance it is conveyed cannot in the abstract be said to be unreasonable, even though that be not the method generally employed. The commission, in its judgment, has determined that to be the equitable method, and has fully advanced the reasons for its view in the opinion it filed contemporaneously with its order. The resulting inconvenience, if any, in the checking of through baggage, growing out of the substitution of this plan for the former one, does not constitute ground for invalidating the commission's action."

We are of the opinion that the commission had sufficient proof before it to justify its action. The law expressly makes the rates fixed by the commission *prima*

*facie* lawful and reasonable, and casts the burden of proof to the contrary upon the railroad companies contesting. The complainants have failed to show that the order of the commission is unreasonable or unwise, much less illegal and unlawful.

The decree of the court below will be affirmed, with costs of both courts.

MONTGOMERY, C. J., and HOOKER and MOORE, JJ., concurred with STONE, J. OSTRANDER, J., concurred in the result.