MICHIGAN CONSOLIDATED GAS COMPANY v PUBLIC SERVICE COMMISSION

OPINION OF THE COURT

1. PUBLIC SERVICE COMMISSIONS—STATUTES—EQUITY—INJUNCTION.

Review provided by statute of the Michigan Public Service Commission's rate making process permits a reviewing court to exercise the full powers of a court of equity in such review, including the power to issue temporary as well as permanent injunctions (MCLA 462.26).

2. PUBLIC SERVICE COMMISSIONS—STATUTES—CERTIORARI—RATES—CONSTITUTIONAL LAW.

Statutory provisions concerning the nature and scope of judicial review of the Michigan Public Service Commission's rate mak-

REFERENCES FOR POINTS IN HEADNOTES

[1, 12] 64 Am Jur 2d, Public Utilities §§ 126, 276 et seq.
[1, 4–13, 16] Adequacy, as regards right to injunction, of other remedy for review of order fixing public utility rates, 8 ALR2d 839.
[2, 3, 20, 29] 64 Am Jur 2d, Public Utilities § 276.
[4] 64 Am Jur 2d, Public Utilities § 278.
[5] 64 Am Jur 2d, Public Utilities §§ 275, 278.
[6, 11] 64 Am Jur 2d, Public Utilities §§ 282, 283.
[7] 64 Am Jur 2d, Public Utilities §§ 266–268.
[9, 10] 64 Am Jur 2d, Public Utilities §§ 275, 277.
[13] 64 Am Jur 2d, Public Utilities §§ 273, 286.
[14] 64 Am Jur 2d, Public Utilities § 240.
[15] 42 Am Jur 2d, Injunctions §§ 352, 353, 356.
Reviewability, on appeal from final judgment, of interlocutory order, as affected by fact that order was separately appealable, 79 ALR2d 1352.
[17, 25, 26] 64 Am Jur 2d, Public Utilities § 135.
[18] 64 Am Jur 2d, Public Utilities §§ 89, 277.
[19] 64 Am Jur 2d, Public Utilities § 127.
[21] 1 Am Jur 2d, Administrative Law § 21.
2 Am Jur 2d, Administrative Law §§ 583, 731–736.
[22] 2 Am Jur 2d, Administrative Law § 553 et seq.
[23, 24, 28] 64 Am Jur 2d, Public Utilities § 133 et seq.
[23, 24] 64 Am Jur 2d, Public Utilities §§ 240–243.
[27] 64 Am Jur 2d, Public Utilities §§ 133 et seq., 273, 286.

ing process is in the nature of certiorari and does not contemplate the judiciary setting rates, but only preventing the confiscation of property, this does not violate the provisions of the Michigan Constitution providing for review of administrative actions and separation of powers of government (Const 1963, art 3, § 2, art 6, § 28; MCLA 462.26).

3. CERTIORARI—CONSTITUTIONAL LAW—DUE PROCESS.

Federal decisions do not require more than review in the nature of certiorari to effect due process in rate cases.

4. PUBLIC SERVICE COMMISSIONS—APPEAL AND ERROR—EQUITY—JURISDICTION—STATUTES—CONSTRUCTION.

Ingham County Circuit Court is given chancery jurisdiction to hear appeals from decisions of the Michigan Public Service Commission by statute and the portion of that statute which states that suits brought thereunder "shall proceed, be tried and determined as other chancery suits" and giving jurisdiction to that court "to make such other order or decree" is clear and unambiguous on its face and no construction is needed when a statute is clear and unambiguous (MCLA 462.26[a]).

5. PUBLIC SERVICE COMMISSIONS—RATES—STATUTES—MANDAMUS.

The purpose of a statute, which provides in part that rates fixed by the Michigan Public Service Commission shall be in force and shall be prima facie lawful and reasonable until finally found otherwise in an action brought for the purpose pursuant to the provisions of that act, was that rates set by the commission would go into effect immediately without having to apply for mandamus to enforce a commission order (MCLA 462.25).

6. ADMINISTRATIVE LAW—PUBLIC SERVICE COMMISSIONS—RATES—COURTS.

Michigan Supreme Court, while fully cognizant of the complexity of the prolonged hearings involved in a rate matter before the Michigan Public Service Commission, cannot, in deference to the administrative process, hold that the judicial power is suspended until such time as the administrative proceedings become final.

7. PUBLIC SERVICE COMMISSIONS—RATE HEARING—JUSTICE DELAYED—STATUTES—COURTS—CONSTITUTIONAL LAW—DUE PROCESS.

"Justice delayed is justice denied," applies with particular force to a rate hearing before the Michigan Public Service Commission; every day a warranted rate increase is withheld is a day in which justice has been denied unless judicial action can be taken and any statutory attempt to so curtail the power of the

judiciary would be unconstitutional as an infringement of due
process.

8. Injunction—Ex Parte Injunction—Public Service Commissions
—Statutes.

The purpose of the "suspending or staying" provision in a statute
which provides that "[n]o injunction shall issue suspending or
staying any order of the [Michigan Public Service] commission,
except upon application to the said circuit court in chancery or
to the judge thereof, notice to the commission having been
given and hearing having been had thereon" is to prevent any
*ex parte* injunction (MCLA 462.26[b]).

9. Injunction—Temporary Injunction—Public Service Commis-
sions—Rates—Irreparable Injury—Constitutional Law—
Statutes.

Before a temporary injunction is granted on appeal to Ingham
County Circuit Court from an order of the Michigan Public
Service Commission, there must be a convincing showing made
to that court, that there is probable cause to conclude that the
commission's grant or refusal of a rate increase will result in
irreparable injury to the complainant, that the ultimate relief
will be granted, and that the affected parties can and will be
protected from substantial injury as a result of issuing the
injunction (Const 1963, art 6, § 28; MCLA 462.26[e]).

10. Injunction—Irreparable Injury—Temporary Injunction—
Public Service Commissions—Rates.

A company need not show that it is actually deprived of its
property in all cases where an injunction is sought against the
Michigan Public Service Commission, as probable cause to
believe that the company is threatened with irreparable injury
is enough; since rates cannot be made to operate retroactively,
the best method of preserving the rights of all parties, a case
for unreasonable action by the Public Service Commission
having been made out where the company showed that the
commission, by refusing to consider increases in costs in the
future while taking into account future reductions, acted arbi-
trarily and unreasonably, is the device of a temporary injunc-
tion.

11. Injunction—Administrative Law.

The injunctive power is not to be used with a free hand to
restrain proceedings pending in administrative tribunals.

12. INJUNCTION—TEMPORARY INJUNCTION.

Before a court grants injunctive relief, even though it is on a temporary basis, a compelling case must be made for such action.

13. INJUNCTION—TEMPORARY INJUNCTION—PUBLIC SERVICE COMMISSIONS—APPEAL AND ERROR—RATES—EVIDENCE—BONDS—REMAND.

Temporary injunction, issued on appeal from the Michigan Public Service Commission, granting a rate increase in addition to that granted by the commission was proper and the circuit court had power to issue it where the rates granted were not established by new evidence but by evidence the commission had refused to consider, the court-granted increases were kept separate and secured by bond, they were not permanent in nature, and the matter of determination of just and reasonable rates was again placed in the hands of the commission by remand from that court.

14. PUBLIC SERVICE COMMISSIONS—RATES—RETROACTIVE RATES.

A public service commission may not establish retroactive rates thereby correcting any injustice caused by a delay in establishing necessary increased rates.

15. INJUNCTION—TEMPORARY INJUNCTION—DISCRETION—APPEAL AND ERROR.

Grant or denial of a temporary injunction is a question of discretion and an appellate court will not interfere with the trial court's ruling except on a showing of probable abuse.

16. PUBLIC SERVICE COMMISSIONS—RATES—STATUTES—EQUITY.

Statutory provision that circuit court relief may be had if rates fixed by the Michigan Public Service Commission are "unlawful or unreasonable" does not necessarily require a judicial determination that a particular rate is "confiscatory" prior to temporary equitable relief (MCLA 462.26[a]).

17. PUBLIC SERVICE COMMISSIONS—RATES—APPEAL AND ERROR—TRUSTS—BONDS.

Circuit court by its order, on appeal from the Michigan Public Service Commission, did not fix and determine rates of a public utility company, but only provided, dependent upon final adjudication by the court, that the company could collect the charges it requested in its application as a trust fund under a bond.

DISSENTING OPINION

T. M. KAVANAGH, C. J., and SWAINSON and WILLIAMS, JJ.

18. PUBLIC SERVICE COMMISSIONS—RATES—LEGISLATURE—APPEAL AND ERROR.

*Rate making is a legislative function and the Legislature has entrusted the implementation of this legislative function to the administrative expertise of the Michigan Public Service Commission; legislative policy determinations by the Public Service Commission, properly made, are not reviewable by the courts.*

19. PUBLIC SERVICE COMMISSIONS—RATES—PRESUMPTIONS.

*Rates established by the Michigan Public Service Commission in exercising the delegated legislative function of determining what return a public utility shall be entitled to earn upon its invested capital and what items shall be considered as properly going to make up the sum total of that invested capital are entitled to a strong presumption of validity.*

20. CERTIORARI—PUBLIC SERVICE COMMISSIONS.

*The powers of the courts with respect to the exercise of the legislative function by the Public Service Commission are limited to review in the nature of certiorari.*

21. ADMINISTRATIVE LAW—APPEAL AND ERROR—CONSTITUTIONAL LAW.

*Under a section of the Michigan Constitution, final decisions of an administrative agency are subject to "direct review" by the courts "as provided by law" (Const 1963, art 6, § 28).*

22. ADMINISTRATIVE LAW—CONSTITUTIONAL LAW—APPEAL AND ERROR.

*A section of the Michigan Constitution precludes de novo review of determinations of any administrative body which are subject to review, with the exception of the Civil Rights Commission, and the scope of review is limited in cases where there is an administrative hearing to the "substantial evidence" standard stated in the Constitution (Const 1963, art 5, § 29; art 6, § 28).*

23. COURTS—CONSTITUTIONAL LAW—RATES—PUBLIC UTILITIES.

*Under certain sections of the Michigan Constitution, the judiciary has no power to exercise regarding the setting of rates of public utilities (Const 1963, art 3, § 2; art 6, § 28).*

24. PUBLIC SERVICE COMMISSIONS—RATES—PUBLIC UTILITIES.

*New rates for public utilities can only be effective, in Michigan, after Public Service Commission approval; and courts may not allow the companies to set rates, since neither the court nor the company has the power or authority to set rates.*

25. PUBLIC SERVICE COMMISSIONS—PUBLIC UTILITIES—RATES—
    CHARGES—STATUTES—TRUSTS.

*Charges collected by a public utility under a trial court's order
that the utility be permitted temporarily to establish and
collect rates and charges, during the pendency of an action by
the utility against the Michigan Public Service Commission to
set aside a rate order, are "rates" both under a statute and in
the economic sense of the word and the supposed protection of
a bond and "trust fund" does not alter the character of these
charges (MCLA 462.26).*

26. PUBLIC SERVICE COMMISSIONS—PUBLIC UTILITIES—RATES—COURTS
    —TRUSTS.

*Doctrine should be overruled that a circuit court did not establish
a rate in an action by a public utility against the Michigan
Public Service Commission, but only provided, dependent upon
final adjudication by the court, that the company could collect
the charges it requested in its application as a trust fund under
a bond.*

27. PUBLIC SERVICE COMMISSIONS—RATES—PUBLIC UTILITIES—COURTS.

*The Ingham County Circuit Court may set aside an order of the
Public Service Commission, if the order is unlawful, and re-
mand to the Commission for determination of new rates for a
public utility, but the court may neither set its own rates nor
prevent the Commission from enforcing its order by a decree
which allows the company to charge any more than, or in
different categories from that, allowed by the Commission.*

28. COURTS—INGHAM COUNTY CIRCUIT COURT—RATES—PUBLIC SER-
    VICE COMMISSIONS—PENDENTE LITE.

*Ingham County Circuit Court exceeded the powers of the judi-
ciary in permitting the establishment of a utility rate, already
denied by the Michigan Public Service Commission, pendente
lite.*

29. EQUITY—PUBLIC SERVICE COMMISSIONS—RATES—CONSTITUTIONAL
    LAW—APPEAL AND ERROR—CERTIORARI.

*So far as a statute purports to confer general equity jurisdiction
on the courts to set provisional, temporary rates for utilities
and to make independent review of the rate orders of the
Michigan Public Service Commission, it is unconstitutional;
insofar as the provisions of a statute purport to allow de novo
taking of evidence they are unconstitutional; the review permit-
ted is in the nature of certiorari and is confined to the record
(MCLA 462.25, 462.26).*

Appeal from Court of Appeals, Division 2, Quinn, P. J., and Fitzgerald and Roberts, JJ., affirming Ingham, Donald L. Reisig, J. Submitted November 3, 1971. (No. 27 October Term 1971, Docket No. 52,994.) Resubmitted March 6, 1973. (No. 9 March Term 1973, Docket No. 52,994.) Decided July 24, 1973.

25 Mich App 512 affirmed.

Complaint by Michigan Consolidated Gas Company against Michigan Public Service Commission to set aside a rate order and for a preliminary injunction, pendente lite, prohibiting the commission from interfering with temporarily-established rates. Injunction granted. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Matheson, Bienenman, Veale & Parr, Arthur R. Seder, Jr., Ellsworth G. Reynolds,* and *Gary L. Cowan,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman, Robert J. Taube,* and *Walter V. Kron,* Assistants Attorney General, for defendant.

T. G. KAVANAGH, J. This case was originally submitted to the Court in October, 1971.

This Court on its own motion dated September 12, 1972 ordered resubmission of the case and additional briefing of the following questions:

Assuming, *arguendo,* that provisions of § 26 of 1909 PA 300 vest "jurisdiction" in the circuit court to issue an injunction such as the one in the instant case:

1. Are any provisions of the statute concerning the nature and scope of judicial review of the Public Service

Commission's rate making process unconstitutional in light of article 6, § 28 and article 3, § 2 of the Michigan Constitution of 1963?

2. Assuming that judicial review is limited to review on the nature of certiorari under Michigan law, do Federal decisions require more?

Subsequently oral argument was allowed and the case submitted at our March term 1973.

Following the first submission of this case I prepared and circulated an opinion for the Court which would reverse the Court of Appeals.

In that opinion, largely on the reasoning of *In re Briggs,* 178 Mich 28 (1913), I concluded the temporary injunction issued herein was beyond the power of the circuit court sitting in this statutory review albeit described in the statute as sitting "in chancery". Justice Aᴅᴀᴍs wrote and circulated an opinion for affirmance.

With apologies to Justice Aᴅᴀᴍs and to whomever it was who first explained a change of mind with the observation "Wisdom so often never comes that it ought never be rejected merely because it comes late", I now acknowledge that I have become persuaded that the review provided by 1909 PA 300, § 26(a); MCLA 462.26(a); MSA 22.45(a) permits a reviewing court to exercise the full powers of a court of equity in such review, including the power to issue temporary as well as permanent injunctions. I do not perceive this to authorize the setting of rates, nor do I regard the temporary injunction issued herein to have done so.

In answer to the questions we posed on resubmission, I would hold

1. The review provided is in the nature of certiorari and does not contemplate the judiciary setting rates, but only preventing confiscation of property.

This does not violate either art 6, § 28 or art 3 § 2 of Const 1963.

2. Federal decisions do not require more than review in the nature of certiorari to effect due process in rate cases.

Accordingly, with the addition of the above answers to the proposed questions, I adopt the following opinion of Justice ADAMS:

## I. *The Proceedings*

On April 11, 1968, Michigan Consolidated Gas Company filed a petition for rate increases with the Michigan Public Service Commission. Hearings commenced in July 1968, and continued through December 1968. 1967 was used as a test period to determine the reasonableness of the requested hikes. However, future increases and reductions beyond 1967 in the company's costs were also put into evidence.

On June 6, 1969, the commission allowed an increase, applicable only to industrial customers, of $4,179,683. On June 30, 1969, Michigan Consolidated appealed to the Ingham County Circuit Court. A preliminary injunction was requested to restrain the commission from interfering with rates which would produce $4,896,628 annually during the pendency of the suit over and above the $4,179,683 increase that had been allowed. The Attorney General also sought a temporary injunction to restrain the company from collecting any increase during pendency of the suit.

On August 1, 1969, the circuit court issued a temporary injunction granting a rate increase, in addition to that granted by the commission, in the amount of $2,854,992 annually. The court provided that, if the rate increase should ultimately be

disallowed, a refund would be made to the company's customers. To insure the refund, the company was ordered to account separately for the extra money collected by it and to provide a bond of $3,000,000. The court reserved jurisdiction to determine appropriate interest rates and methods of refunding. The court's increase affected residential and commercial customers who had not been affected by the commission's order.

In its grant of a temporary injunction the circuit court followed the reasoning in *General Telephone Company of Michigan v Public Service Commission,* 341 Mich 620, 632 (1954):

"When failure to provide adequate rates in the past cannot be remedied by retroactive orders, it follows that every reasonable effort should be made by the commission to eliminate unnecessary delay and to pass judgment on facts that will not only reflect upon the present but a reasonable period in the future."

The circuit court first noted that "in the instant case the 'test year' utilized before the Commission was a year commencing almost two and a half years and terminating almost one and a half years prior to the issuance of the Commission's orders, thus virtually negating at the outset the statutory design of accomplishing speedy final determination of the issues involved." Second, the court noted that, although the commission took into account future reductions in assessing a reasonable rate, it refused to take into account future increases in costs. The court concluded:

"Certainly at first blush it would appear to anyone steeped in 'due process' considerations that it is grossly unfair to include certain items of decreased cost in rate determination while at the same time to exclude items of increased cost."

An interlocutory appeal was taken to the Court of Appeals. Prior to decision by that Court, the matter was also remanded, in accordance with the statute, to the commission. In its February 11, 1970, statutory report to the circuit court, the commission agreed with the court with regard to the validity of the additional rate increases. However, the commission contended that its decision was *prospective* only, based on new evidence, and did not include the rate increases allowed by the temporary injunction up to the date of its report. Contrary to these conclusions, the circuit court noted "that all of the reasons stated by the Commission in its statutory report on remand in support of its present position, i.e., that Consolidated's capital structure as established in the rate order of June 6, 1969, should be amended to include the November 25, 1968, bond sale, *existed* and were *foreseeable* at the time the Commission entered its original order". The circuit court, on July 21, 1970, rendered a final opinion in which it permanently continued in effect its injunction.

The Court of Appeals affirmed the circuit court's power to issue a preliminary injunction. Appeal on leave granted was taken to this Court.

II. *Did the Circuit Court have Jurisdiction to Issue a Temporary Injunction pursuant to 1909 PA 300, § 26.*

*(a) Section 26(a)*

The Ingham County Circuit Court is given chancery jurisdiction to hear appeals from the decisions of the commission by statute (MCLA 462.26[a]; MSA 22.45[a]):

"Any common carrier or other party in interest,

being dissatisfied with any order of the commission
fixing any rate * * * may * * * commence an action in
the circuit court in chancery for the county of Ingham
* * * . All suits brought under this section shall have
precedence over any civil cause of a different nature
pending in such court, * * * and the same *shall pro-
ceed, be tried and determined as other chancery
suits.* * * * and the said circuit court in chancery is
hereby given jurisdiction of such suits and empowered
to affirm, vacate or set aside the order of the commis-
sion in whole or in part, and *to make such other order
or decree* as the court shall decide to be in accordance
with the facts and the law." (Emphasis added.)

The portion of the statute that is emphasized is
clear and unambiguous on its face. When a statute
is clear and unambiguous, no construction is
needed. There is no dispute between the litigants
that general equity powers include the power to
issue a temporary injunction. There is no direct
statement in the statute limiting the circuit
court's general equity powers.[1] The commission
maintains, however, that if the entire statute is
properly construed, it does limit the court's power
to issue a temporary injunction. It bases this claim
on the following statutory language:

MCLA 462.25; MSA 22.44:

"All rates, fares, charges * * * fixed by the commis-

---

[1] *In re Briggs,* 178 Mich 28 (1913), cited by Justice T. G. KAVANAGH,
contains broad language as to the power conferred upon the circuit
court by the statute. However, that case was a contempt proceeding
in which, as this Court stated (p 34): "Neither the validity of the
statute involved, nor the right of the circuit court, in chancery, to
entertain the bill of complaint filed by Mr. Jones has been raised or
discussed by counsel, and neither of these questions is here consid-
ered." The circuit judge had failed to follow the provisions of the
statute. This Court noted (pp 35–36): "The order was in the nature of
an injunction, among other things, suspending and staying the order
of the commission, *and was granted without proper application and
notice.*" (Emphasis added.) The case for contempt failed because the
provisions of the statute were not followed.

sion and all regulations, practices and services prescribed by the commission shall be *in force* and shall be *prima facie,* lawful and reasonable *until finally found* otherwise in an action brought for the purpose pursuant to the provisions * * * of this act, * * * ." (Emphasis added.)

MCLA 462.26(b); MSA 22.45(b):

"No injunction shall issue *suspending or staying* any order of the commission, except upon application to the said circuit court in chancery or to the judge thereof, notice to the commission having been given and hearing having been had thereon." (Emphasis added.)

MCLA 462.26(e); MSA 22.45(e):

"*In all actions* under this section the burden of proof shall be upon the complainant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable, as the case may be." (Emphasis added.)

### *(b) Section 25*

The commission contends that under section 25, if the rates set by it are in force and prima facie reasonable and lawful until *finally* found otherwise by the courts, a temporary injunction would conflict with this provision of the statute.

The purpose of § 25 was that rates set by the commission would go into effect immediately without having to apply for mandamus to enforce a commission order. See *Fletcher Paper Co v Detroit & M R Co,* 198 Mich 469 (1917). In *Michigan Railroad Commission v Michigan Central R Co,* 159 Mich 580, 583 (1910), the Court stated that "the prospect of a term of years elapsing before a final determination of the questions raised is, under the circumstances of this case, a cogent reason

why the legislature provided that the order should be effective during such delays".

In this case, we are not concerned with the problem of putting into immediate effect an order of the commission. The gas company alleged that the rates set by the commission were so low as to be confiscatory.

Time may well be an essential factor in the need for judicial action. The vital time sequence in this case is as follows:

| | |
|---|---|
| April 11, 1968: | Petition for rate increase. |
| June 6, 1969: | Commission grants increase. |
| June 30, 1969: | Appeal to the circuit court. |
| June 30, 1969: | Motion for temporary injunction. |
| August 1, 1969: | Order granting preliminary injunction. |
| February 11, 1970: | Statutory report from commission back to circuit court after remand to commission. |
| July 21, 1970: | Final judgment of circuit court. |

As the commission stated in its opinion of June 6, 1969: "The rates of Consolidated were last increased in November, 1960. Since that date its rates have been reduced three times." While we are fully cognizant of the complexity of the prolonged hearings involved in a rate matter before the commission, we cannot, in deference to the administrative process, hold that the judicial power is suspended until such time as the administrative proceedings become final. The old saying, "Justice delayed is justice denied," applies with particular force to a rate hearing. Every day a warranted rate increase is withheld is a day in which justice has been denied unless judicial action, as in this case, can be taken. Any statutory attempt to so curtail the power of the judiciary

would be unconstitutional as an infringement of due process.

In *Michigan Bell Telephone Co v Ingham Circuit Judge,* 325 Mich 228, 234 (1949), this Court, while denying the remedy therein sought by plaintiff, specifically affirmed the proposition that: "A rate order which is confiscatory is an unreasonable order and cannot be sustained." See, also, *General Telephone Company of Michigan v Public Service Commission, supra.*

In *Ohio Valley Water Co v Ben Avon Borough,* 253 US 287, 289; 40 S Ct 527; 64 L Ed 908 (1920), where the issue of judicial review was raised, it was stated:

"In all such cases, if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment."

### (c) Section 26(b)

The commission maintains that if the circuit court is allowed to issue a temporary injunction, the words "suspending or staying" in section 26(b) are a limitation upon that injunctive power. The section, read as a whole, indicates that the purpose of this provision is to prevent any *ex parte* injunction.

In *General Telephone Company of Michigan v Public Service Commission, supra,* the circuit court, in remanding the matter to the commission for consideration of increased expenses, issued a temporary injunction allowing the company to collect the *increased* charges pending further ac-

tion by the commission. The company provided a bond to insure a proper refund if, in future hearings, it should be found that the increase was wrongfully allowed. The Supreme Court approved the circuit court's order, stating (633):

"We believe that the circuit court properly exercised its general equity jurisdiction to protect the company from confiscatory rates * * * ."

In that case, the injunction was issued after the trial court had set aside the commission's order and had remanded the matter to the commission for reconsideration. It allowed an increased rate pending final determination. The injunction, as in this case, went beyond "suspending or staying" the order of the commission.

### (d) Section 26(c)

The commission further contends that, if the burden of proof is upon the complainant, a temporary injunction cannot issue as the burden of proof, at that point, has not been met. The Michigan Constitution, art 6, § 28, provides that in reviewing an administrative decision, the court must determine whether it is "supported by competent, material and substantial evidence on the whole record." In § 26(e), the burden of proof is to show that the orders of the commission are "unlawful *or* unreasonable." (Emphasis added.) The constitutional and statutory provisions mean that before a temporary injunction is granted, there must be a convincing showing made to the circuit court, that there is probable cause to conclude that the commission's grant or refusal of a rate increase will result in irreparable injury to the complainant, that the ultimate relief will be

granted, and that the affected parties can and will be protected from substantial injury as a result of issuing the injunction. See *Niedzialek v Journeymen Barbers*, 331 Mich 296 (1951).

In *General Telephone Company of Michigan v Public Service Commission, supra,* it was stated (631):

"To * * * provide rates that are 'just and reasonable' the commission should consider not only all reasonable costs of doing business, including interest on the bonded indebtedness and a fair dividend on the equity in the year preceding the hearing, as the commission did in this case, but should also consider these factors as they will influence yields for a reasonable time in the future."[2]

In this case, the company showed that the commission, by refusing to consider increases in costs *in the future* while taking into account *future reductions,* acted arbitrarily and unreasonably. The circuit court's injunction was based on the "substantial questions" that had been raised, the threat of "irreparable injury" to the company if the order was not modified, and with "adequate guarantees of refunding with interest" any moneys found later to be wrongfully charged. "In all cases", the company need not show that it is actually deprived of its property. Probable cause to believe that the company is threatened with irreparable injury is enough. Since rates cannot be made to operate retroactively, the best method of preserving the rights of all parties, a case for unreasonable action by the commission having been made out, is the device of a temporary injunction.

[2] *McCardle v Indianapolis Water Co,* 272 US 400; 47 S Ct 144; 71 L Ed 316; 1927A PUR 15 (1926).

### III. *Refunds and Hardship*

The commission raises two concerns which should be considered. It contends that if the rates granted by the circuit court were ultimately overturned instead of affirmed, it would be very difficult to insure a refund to the customers who paid the increased rates, and it could also cause needless hardship to some persons during the time the increases were in effect. This Court has made it clear that the injunctive power is not to be used with a free hand to restrain proceedings pending in administrative tribunals. See, *In re Briggs,* 178 Mich 28 (1913); *Highland Park v Fair Employment Practices Commission,* 364 Mich 508 (1961). Other cases have explicitly recognized the superior authority and expertise of administrative agencies. *Michigan Central R Co v Michigan Railroad Commission,* 160 Mich 355 (1910); *Detroit v Michigan Railroad Commission,* 209 Mich 395; 1920D PUR 867 (1920); *Michigan Bell Telephone Co v Public Service Commission,* 332 Mich 7 (1952); *J E Bejin Cartage Co v Public Service Commission,* 352 Mich 139 (1958).

Before the court grants injunctive relief, even though it is on a temporary basis, a compelling case must be made for such action. The overall responsibility of both the commission and the court was stated in the *General Telephone Company case, supra* (631):

"It is evident from an examination of the statute that the legislature placed upon *both the commission and the circuit court* of Ingham county a joint responsibility to see to it that telephone rates were just and reasonable." (Emphasis added.)

### IV. *Was the Temporary Injunction beyond the Court's Equity Powers Statutorily given in the Act?*

Const 1963, art 3, § 2, provides:

"No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

In *Michigan Central R Co v Wayne Circuit Judge,* 156 Mich 459, 470 (1909), this Court said:

"The power conferred upon the courts is solely to determine whether the rates are confiscatory or unreasonable. If the courts should so find, they are not authorized to determine what are reasonable, but the matter must again be referred to the commission to establish other rates."

In this case, the rates granted were not established by new evidence, but by evidence the commission had refused to consider. The court-granted increases were kept separate and secured by bond. They were not permanent in nature. The matter of determination of just and reasonable rates was again placed in the hands of the commission by the remand from the circuit court. The temporary injunction issued in this case was proper and the circuit court's power to issue it is upheld.

## Summary

By way of summary, we quote with approval the following from the opinion of the Court of Appeals (25 Mich App 512, 515–517 [1970]):

"Our Supreme Court has explicitly held that a commission may not establish retroactive rates thereby correcting any injustice caused by a delay in establishing necessary increased rates. *Michigan Bell Telephone Co. v Public Service Commission* (1946), 315 Mich 533; *General Telephone Company of Michigan v. Public Service Commission, supra,* at p 632. Thus, had the preliminary injunction not issued, and had the company

prevailed in the trial of this cause, the latter would have achieved a hollow victory indeed since there would have been no legal avenue open to the company by which to recoup its financial losses. We think this case presents a classic example of a situation in which a party will suffer 'irreparable harm' in the event that a preliminary injunction is not issued.

"On the other hand, this Court is unable to see how appellant commission has been injured in any manner whatsoever by the granting of the preliminary injunction. Judge Reisig has taken proper measures by which to guarantee full refund, with interest, to the company's customers in the event that the litigation is determined adversely to the company.

"Factually, we have carefully reviewed the record and find ample support for Judge Reisig's order. GCR 1963, 517.1. 'The grant or denial of a temporary injunction is a question of discretion and this Court will not interfere with the trial court's ruling except on a showing of probable abuse.' *Hiers v. Detroit Superintendent of Schools* (1965), 376 Mich 225, 231. There is no abuse shown on this record.

"In response to the Appellant's second question that the company must show that the commission's order was 'confiscatory', we note that the governing statute states that circuit court relief may be had if ' * * * rates fixed are unlawful or unreasonable * * * or that any regulation is unreasonable * * * .' MCLA § 462.26(a) (Stat Ann 1970 Cum Supp § 22.45[a]). The statute does not necessarily require a judicial determination that a particular rate is 'confiscatory' prior to temporary equitable relief and we have no authority to interpret the statute to include such an element.

"The *General Telephone* case, *supra,* forecloses the commission's argument that the actions by the circuit court 'fixed and determined rates'. 'The court by its decree did not establish a rate, but only provided, dependent upon final adjudication by the court, that the company could collect the charges it requested in its application as a trust fund under a bond of $1,000,000.' *General Telephone Company of Michigan v. Public Service Commission,* 341 Mich, p 632."

Costs to the Michigan Consolidated Gas Company.

T. E. Brennan, Levin, and M. S. Coleman, JJ., concurred with T. G. Kavanagh, J.

Williams, J. *(for reversal)*. My Brothers Justice Thomas Giles Kavanagh and former Justice Paul L. Adams have laid out the facts sufficiently and well.

The dispositive question is whether § 26(a) of 1909 PA 300 (MCLA 462.26[a]; MSA 22.45[a]) authorizes and may authorize a court to establish utility rates, directly or indirectly.

That portion of § 26(a) with which we are concerned is set out below:

"Any common carrier or other party in interest, being dissatisfied with any order of the commission fixing any rate * * * may * * * commence an action in the circuit court in chancery for the county of Ingham * * * and the same shall proceed, be tried and determined as other chancery suits * * * and the said circuit court in chancery is hereby given jurisdiction of such suits and empowered to affirm, vacate or set aside the order of the commission in whole or in part, and to make such other order or decree as the court shall decide to be in accordance with the facts and the law."

Const 1963, art 3, § 2 provides:

"No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

We begin with the proposition, now axiomatic, that rate making is a legislative function.[1] The

---

[1] *See, e.g., Michigan Central R Co v Wayne Circuit Judge,* 156 Mich 459, 470 (1909); *Michigan Central R Co v Michigan Railroad Commission,* 160 Mich 355, 360–368 (1910); *Cadillac v Citizens' Telephone Co,* 195 Mich 538, 544 (1917); *Detroit v Michigan Railroad Commission,*

Legislature has entrusted the implementation of this legislative function to the administrative expertise of the Michigan Public Service Commission.[2] Legislative policy determinations by the Public Service Commission, properly made, are not reviewable by the courts. Speaking to this we said in *In re Consolidated Freight Co,* 265 Mich 340, 351 (1933):

> "In such instances the determinations of fact issues pertain only to the functioning of the commission in its legislative capacity, as an adjunct to the legislature. The policy or wisdom of such action by the commission cannot be reviewed by the courts * * * . In short, in so far as the functioning of a commission pertains to the administration of executive or legislative matters, it is not reviewable in this court."

Although *Consolidated* dealt with fact determinations underlying the issuance of a "certificate of public convenience and necessity", the principle of separation of powers there expressed is applicable to administrative rate making. In *Michigan Bell Telephone Co v Public Service Commission,* 332 Mich 7, 26 (1952) we said:

> " *'What return a public utility shall be entitled to earn* upon its invested capital, *and what items shall* be considered as properly going to make up the sum total

209 Mich 395, 411 ff (extensively collected cases) (1920); *Detroit v Michigan Public Utilities Commission,* 288 Mich 267, 287 (1939) and a continuing line of cases. *See also Prentis v Atlantic Coast Line Co,* 211 US 210; 29 S Ct 67; 53 L Ed 150 (1908); *Louisville & Nashville R Co v Garrett,* 231 US 298; 34 S Ct 48; 58 L Ed 229 (1913) and a continuing line of Federal cases.

[2] 1939 PA 3, § 6, as amended by 1967 PA 125; MCLA 460.6; MSA 22.13(6) provides in part:

"The public service commission is vested with complete power and jurisdiction to regulate * * * all rates, fares, fees, charges * * * of such public utilities. It is further granted the power and jurisdiction to hear and pass upon all matters pertaining to or necessary or incident to such regulation of all public utilities, including * * * gas companies * * * ."

of that invested capital, *are questions of fact for the determination of the commission \* \* \* .' "*[3]* (Emphasis added.)

It follows that the rates established by the commission in exercising this delegated legislative function are entitled to a strong presumption of validity. In *Detroit v Michigan Railroad Commission,* 209 Mich 395, 427–430, collecting cases (1920) we held:

" '[R]ates fixed by the commission are *prima facie* lawful \* \* \* .'*[4]*

\*     \*     \*

" ' "[T]he court should start with the presumption that the order is valid, and was made after careful consideration and correct determination of every question of fact underlying it, and it should be accorded that respect and influence which ought to attend, and does attend, the action of a legislative or administrative board, whose members are, in point of ability, learning and experience specially qualified to determine such matters." ' " *Id,* 427–428.*[5]*

\*     .\*     \*

" 'Presumptively, the findings and orders of the commission are right' " *Id,* 429.*[6]*

---

*[3]* Quoting *Detroit v Michigan Railroad Commission,* 209 Mich 395, 433 (1920) (opinion of BROOKE, J., concurring).

*[4]* Quoting *Michigan Central R Co v Michigan Railroad Commission,* 160 Mich 355, 368 (1910).

*[5]* *Id,* quoting *Missouri, K & T R Co v Interstate Commerce Commission,* 164 Fed 645, 650 (1908).

*[6]* Quoting *Detroit & Mackinac R Co v Michigan Railroad Commission,* 171 Mich 335, 346 (1912). *See also* 4 Davis, Administrative Law, § 29.09, p 163 and 1970 supplement, § 29.09, p 1017. Illustrative of the cases in other jurisdictions is *Pacific Telephone & Telegraph Co v Public Utilities Commission,* 62 Cal 2d 634, 647; 44 Cal Rptr 1, 8; 401 P2d 353, 360 (1965): "Such burden [of challenging a rate order] is coupled with a *strong presumption of the correctness of the findings and conclusions of the commission,* which may choose its own criteria or method of arriving at its decision, even if irregular, provided unreasonableness is not 'clearly established.' " (Emphasis added.)

Although not necessary to create the presumptive validity of rate

As a necessary consequence, the powers of the courts with respect to the exercise of this legislative function by the Public Service Commission are limited to review in the nature of *certiorari.* In *Michigan Central R Co v Wayne Circuit Judge,* 156 Mich 459, 470 (1909) we said:

"We do not construe the provisions of this act to lodge in the courts the power to establish rates. The power conferred upon the courts is solely to determine whether the rates are confiscatory or unreasonable. If the courts should so find, they are not authorized to determine what are reasonable, but the matter must again be referred to the commission to establish other rates."

In *In re Consolidated Freight Co, supra,* the question was whether a statute could validly grant equity jurisdiction to the courts to make an independent review of law and facts.[7] We held that the act must be limited to allow review in the nature of certiorari only. We said that even though the commission was functioning in a legislative capacity the lawfulness of its actions was reviewable:

"However, the commission must act within the law. Whether it has so acted is subject to review by the courts and *such review is strictly in the nature of certiorari* where the legal aspect of the commission's determination may be inquired into, but not the factual phases of its determination." 265 Mich 340, 351–352 (emphasis added).

---

orders, MCLA 462.25; MSA 22.44 provides in part: "All rates, fares, charges * * * fixed by the commission * * * shall be in force and shall be prima facie, lawful and reasonable * * * ."

[7] The statutes involved, 1931 PA 212, § 13 and 1931 PA 312, § 8; provided in pertinent part:

"The orders of the commission issued under the provisions of this act shall be subject to review by the Supreme Court of the State, both as to the law and the facts, and the statutes, rules and practice on appeals to the Supreme Court from circuit courts in equity cases shall apply to and govern proceedings for such review."

The power of courts under Michigan law to make independent review of administrative findings was considered recently in *Viculin v Department of Civil Service,* 386 Mich 375 (1971). Under Const 1963, art 6, § 28, final decisions of an administrative agency are subject to "direct review" by the courts as "provided by law". One question in *Viculin* was whether it may be "provided by law" that the "direct review" of determinations by the State Civil Service Commission shall be *de novo* review, an independent examination by the courts as to law and facts. We held by unanimous vote that (with the specific constitutional exception of the Civil Rights Commission under Const 1963, art 5, § 29) Const 1963, art 6, § 28 precludes *de novo* review of determinations of any administrative body which are subject to review, and that the scope of review was limited in cases where there was an administrative hearing to the "substantial evidence" standard stated in Const 1963, art 6, § 28: " * * * whether the same are supported by competent, material and substantial evidence *on the whole record".* (Emphasis added.)

It is said that a different standard must apply to review of administrative *rate making* proceedings. The authority for this is said to be that the Federal Constitution requires independent judicial review of rate determinations based on the doctrine in the case of *Ohio Valley Water Co v Ben Avon Borough,* 253 US 287, 289; 40 S Ct 527, 528; 64 L Ed 908, 915 (1920):

"In all such cases, if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is

void because in conflict with the due process clause,
Fourteenth Amendment."

This doctrine respecting rate making has seen
expression in Michigan cases such as *General
Telephone Co of Michigan v Public Service Com-
mission,* 341 Mich 620, 631 (1954):

"It is evident from an examination of the statute that
the legislature placed upon *both the commission and
the circuit court of Ingham county a joint responsibility*
to see to it that telephone rates were just and reasona-
ble." (Emphasis added.)

Whatever the vitality of this doctrine under
*Michigan* law in the past, under Const 1963, art 3,
§ 2 and Const 1963, art 6, § 28 the judiciary has no
power to exercise regarding the setting of rates.
The only possible remaining claim to power to
issue preliminary injunctions such as the one at
issue here is that the doctrine of *Ben Avon Bor-
ough* requires independent judicial review and
that such injunctions may issue from courts as
ancillary to the exercise of this Federal constitu-
tional duty of independent review.

However, we can no longer accept the doctrine
of *Ben Avon Borough* as controlling Federal consti-
tutional law. The theory of the case has been
discredited by later Supreme Court decisions.
Since the *Ben Avon* case the Court has failed to
apply the doctrine and the cases indicate that
adoption of the "substantial evidence" test.[8] For

---

[8] One case which seemed to rely on *Ben Avon* was *St Joseph Stock
Yards Co v United States,* 298 US 38; 56 S Ct 720; 80 L Ed 1033
(1936). Even there the Court signaled its retreat from *Ben Avon* by
saying that courts must be guided by the "' * * * strong presumption
in favor of the conclusions reached by an experienced administrative
body after a full hearing.'" 298 US 38, 53, quoting *Darnell v Ed-
wards,* 244 US 564, 569; 37 S Ct 701, 703; 61 L Ed 1317, 1321 (1917).
*See also* the concurring opinion of Mr. Justice Brandeis, 298 US 38, at
78–80.

the example in *Federal Power Commission v Natural Gas Pipeline Co,* 315 US 575, 586; 62 S Ct 736, 743; 86 L Ed 1037, 1051 (1942) the Court said:

"Agencies to whom this legislative power has been delegated are free, within the ambit of their statutory authority, to make the pragmatic adjustments which may be called for by particular circumstances. Once a fair hearing has been given, proper findings made and other statutory requirements satisfied, the courts cannot intervene in the absence of a clear showing that the limits of due process have been overstepped. If the Commission's order, as applied to the facts before it and viewed in its entirety, produces no arbitrary result, our inquiry is at an end."

See also *Railroad Commission v Rowan & Nichols Oil Co,* 310 US 573, 581; 60 S Ct 1021, 1024; 84 L Ed 1368, 1373 (1940);[9] *Federal Power Commission v Hope Natural Gas Co,* 320 US 591, 602; 64 S Ct 281, 288; 88 L Ed 333, 345 (1944);[10] *Alabama Public Service Commission v Southern R Co,* 341 US 341; 71 S Ct 762; 95 L Ed 1002 (1951); *Permian Basin Area Rate Cases,* 390 US 747, 767; 88 S Ct 1344, 1360; 20 L Ed 2d 312, 336 (1968).[11] Professor Ken-

[9] "[C]ourts must not substitute their notions of expediency and fairness for those which have guided the agencies to whom the formulation and execution of policy have been entrusted."

[10] "It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, *the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity.* And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. Cf. *Railroad Commission v. Cumberland Tel. & T. Co.* 212 U.S. 414 [29 S Ct 349; 53 L Ed 564 (1909)]; *Lindheimer v. Illinois Bell Tel. Co., supra,* pp. 164, 169 [292 US 151; 54 S Ct 658; 78 L Ed 1178 (1934)]; *Railroad Commission v. Pacific Gas & Electric Co.,* 302 U.S. 388, 401 [58 S Ct 334; 82 L Ed 319 (1938)]." (Emphasis added.)

[11] "[T]he Natural Gas Act provides without qualification that the

neth Davis, perhaps the foremost authority on administrative law, has flatly stated that the *"Ben Avon* doctrine in the federal courts is dead." 4 Davis, Administrative Law § 29.09, p 174. An especially helpful article is Glick, *Independent Judicial Review of Administrative Rate-Making: The Rise and Demise of the Ben Avon Doctrine,* 40 Fordham L Rev 305 (1971).

We follow the precedent of state jurisdictions such as New York in the case of *New York Telephone Co v Public Service Commission,* 36 App Div 2d 261; 320 NYS2d 280 (1971). In that case, as here, the trial court had granted a preliminary injunction against the Public Service Commission. The appellate division, refusing to follow the *Ben Avon* rule, reversed and this finding was sustained by the New York Court of Appeals,[12] although other parts of the decision on the merits were modified.

In the part of the appellate division decision left undisturbed that Court said:

"The holding of *Staten Island* [prior New York precedent like that in Michigan] was necessitated by strict adherence to the Supreme Court's rule in the *Ben Avon* case decided in 1920, a rule which that court itself has all but ignored and which it has cited only once in a rate case since it was handed down." *Id,* 265.

In addition to the principle of separation of powers, there are strong policy reasons noted by the New York Court for the limited judicial power of review in rate cases:

'finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive.' More important, we have heretofore emphasized that Congress has entrusted the regulation of the natural gas industry to the informed judgment of the Commission, and not to the preferences of reviewing courts."

[12] *New York Telephone Co v Public Service Commission,* 29 NY2d 164; 324 NYS2d 53; 272 NE2d 554 (1971).

"The time consumed, the expense involved, the cumbersome procedures, and the loss of public confidence in administrative agencies all militate against the maintenance of a dual system of determining the issues in rate cases." *Id*, 267–268.

An especially helpful opinion on this point is the case of *Long Island R Co v United States,* 193 F Supp 795 (ED NY, 1961). The question was whether a suspension order of the Interstate Commerce Commission was reviewable and Judge Friendly said in denying relief:

"[T]he mere possibility of resort to the courts may seriously interfere with the administrative agency's effective performance of functions where speed is of the essence. * * * [T]here remains the risk * * * that unmeritorious attacks, at least if accompanied by relief *pendente lite,* may accomplish the very objective of effectively blocking the suspension which is meant to be reserved for meritorious ones." *Id,* 799.[13]

In the Federal regulatory structure statutes al-

---

[13] *See also* Glick, *Independent Judicial Review of Administrative Rate-Making: The Rise and Demise of the Ben Avon Doctrine,* 40 Fordham L Rev 305, 306 (1971):

"*The import of the* Ben Avon *decision is quite clear. It provides a public utility with a second chance to obtain a rate increase or challenge a rate reduction after the matter has been finally passed upon by the administrative or quasi-legislative body charged with the duty to fix such rates.* Such a de novo trial literally wipes the slate clean and theoretically enables the utility to proceed as if no prior determination had been made. *The patently undesirable effect of this rule is to undermine the finality and authority of administrative ratemaking by permitting utilities to entirely ignore such rates by crying 'confiscation' and seeking judicial review.* The courts are then faced with the onerous task of sifting through volumes of economic data and generally contradictory expert testimony without the refined expertise of the specialists who sit on public service commissions and attempting to arrive at a more enlightened judgment than the administrative body that has already undertaken the task. Not only does this tend to unnecessarily burden our already overworked trial courts, but it also tends to decrease the quality of the determination by imposing a Herculean task on trial court judges, many of whom are simply not up to it." (Emphasis added.)

low companies to increase their rates subject to an administrative suspension. See Spritzer, *Uses of the Summary Power to Suspend Rates: An Examination of Federal Regulatory Agency Practices,* 120 U Pa L Rev 39 (1971). In Michigan new rates can only be effective after commission approval, and a bill to change the practice to the Federal system was recently defeated.[14] Since rates cannot be instituted under our system by the company without commission approval, even if in some extreme case an injunction could issue it does not follow that courts may allow the companies to set rates, as was done here, since neither the court nor the company has power or authority to set rates.

In *General Telephone Company of Michigan v Public Service Commission, supra,* this Court approved of the granting of an injunction such as the one at issue here. In answer to the claim that the circuit court had no power to establish rates we said:

"The court by its decree did not establish a rate, but only provided, dependent upon final adjudication by the court, that the company could collect the charges it requested in its application as a trust fund under a bond * * * ." 341 Mich 620, 632.

If these charges are not "rates" then what are they? In the instant case part of the trial court's

---

[14] A bill was introduced in the 1970 Michigan Legislature, SB 1572, which would have provided for a system similar to the Federal regulatory structure. Public utilities would have power to collect new rates, subject to periods of suspension, with provisions for refund if necessary upon final order of the commission, or upon appeal. The bill was defeated in the Senate.

In the current session of the Legislature there has been introduced a bill (HB 4496) to require *majority legislative approval* of rate increases *after* approval by the Public Service Commission. This represents a legislative policy of control with even greater contrast to the Federal system than our present law.

Order and Preliminary Injunction acknowledges that these were truly "rates":

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that during the pendency of the above-captioned actions and pending further order of this court the company be, and it hereby is, *permitted temporarily to establish and collect rates* and charges designed to increase its revenues *in the amount of $2,854,992* annually, in addition to that authorized by the defendant Commission in its order of June 6, 1969 in Case No. U-3095.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that *defendant Michigan Public Service Commission is temporarily restrained* and enjoined, during the pendency of this cause, *from interfering with plaintiff* establishing and *filing appropriate tariff sheets* with the Commission designed to increase its revenues in the amount of $2,854,992 annually, in addition to that authorized by the defendant Commission in its order of June 6, 1969, in Case No. U-3095, *and the same defendant Commission is temporarily restrained and enjoined from interfering with plaintiff collecting rates* and charges in the amount of $2,854,-992 annually, in addition to those authorized in the order of defendant Commission in its order in Case U-3095." (Emphasis added.)

In truth, the charges collected by the company under the decree here and in *General Telephone are* "rates" both under the statute and in the economic sense of the word. From the point of view of the subscribers these sums to be paid have every unwanted appearance of being a "rate". The supposed protection of the bond and "trust fund" does not alter the character of these charges and courts are now recognizing that this protection often exists more in theory than in practice. The Supreme Court of the United States had occasion to comment on the experience under refund procedures in the case of *Federal Power Commission v*

*Tennessee Gas Transmission Co,* 371 US 145, 154–155; 83 S Ct 211, 216; 9 L Ed 2d 199, 206 (1962):

> *"True, the exaction would have been subject to refund,* but *experience has shown this to be somewhat illusory in view of the trickling down process necessary to be followed,* the incidental cost of which is often borne by the consumer, and in view of the *transient nature of our society which often prevents refunds from reaching those to whom they are due."* (Emphasis added.)

Since the company has power only to charge "rates" what should the company's remedy be if a subscriber refused to pay the charges on the ground that he must only pay "rates" and these charges are not statutory "rates" under the rule of *General Telephone?* Should a court answer that for purposes of the subscriber these are indeed "rates" but for purposes of the company collecting rates they are not really "rates" but are some form of unnamed and involuntary contribution to a so-called trust fund? The Court in *General Telephone supra,* recognizing that the judiciary has no power to set "rates", approved the judicial setting of rates by the device of legal fiction. We in this day and age cannot engage in such an unreality, and the *General Telephone* doctrine is overruled.[15]

---

[15] On more than one occasion this Court has noted that we are not forbidden to know as judges what we see as men, *Wilkins v Ann Arbor City Clerk,* 385 Mich 670, 691 (1971). One example of this judicial realism which might apply equally to the question of whether these charges are "rates" is the discussion by Justice BLACK in *Lockwood v Commissioner of Revenue,* 357 Mich 517, 575–576 (1959). The question was whether a "use" tax was really a "sales" tax and after a well considered legal analysis, Justice BLACK concluded: "Even an appellate court judge, living as he must in a measure of social detachment, must on occasion get down to the earthy level where groceries and other necessaries of mortal sustenance [such as gas, light, transportation *etc.],* are sold and bought at retail, for even judges must eat. Lined up with his fellow purchasers at the checkout station, Mr. Justice gets the same look—from the point of view of people generally— * * * . What is that look, from the actual point of

In the case at bar, the Ingham County Circuit Court was authorized to find that, on the whole record, the rates set were unlawful or unreasonable, that is, the determination was not supported on the record by substantial evidence. If the rates were *actually* confiscatory, of course, it would only be an example of a more extreme form of unreasonable determination. But the court may not decide for itself what is a fair rate of return.

If the order is unlawful, the court may set it aside and remand to the commission for determination of new rates, but the court may neither set its own rates nor prevent the commission from enforcing its order by the device of a judicial decree which allows the company to charge any more than, or in different categories. from that allowed by the commission.

The Ingham County Circuit Court here both set its own rates by authorizing the company to establish, pendente lite, a *court-approved rate* restoring a specified amount already denied by the commission, and stayed the implementation of the order of the Michigan Public Service Commission which limited the rate increase.

We hold the Ingham County Circuit Court exceeded the powers of the judiciary in permitting the establishment of such a rate pendente lite. Insofar as § 26 of 1909 PA 300 purports to confer general equity jurisdiction on the courts to set provisional, temporary rates and to make independent review of the rate orders of the Michigan Public Service Commission it is unconstitutional.

view of the queue of buyers as each proceeds in procession to ante up? * * * The sum * * * is totted up and the checkout operator thereupon presses the "TX" button * * * . He pays the exacted tax—not 2 separate taxes by fact or common understanding— * * * . He has— all artful legal syllogism aside—paid what to him and his fellows is no less than a levied sales tax of 4% * * * ."

Insofar as the provisions of § 25 of 1909 PA 300 purport to allow *de novo* review they are unconstitutional.[16]

The review permitted is in the nature of certiorari and is confined to the record.

We leave for future determination, since it is not here a matter of record, whether a court in the exercise of its equity powers may give some appropriate form of relief in the event that the petitioner was suffering actual confiscation in the sense that he was losing money in his operation, *i.e.,* the operations were returning a negative income. In this connection we speak of confiscatory as we did in *Michigan Central R Co v Michigan Railroad Commission,* 160 Mich 355, 358 (1910):

"[T]he rates fixed by the commission are *not confiscatory, but afford some remuneration over and above expenses * * * ."* (Emphasis added.)

See also, *Chicago & North Western R Co v Public Service Commission,* 329 Mich 432, 449ff (1951).

We also leave to future decision whether or not this Court under similar circumstances could grant equitable relief prior to final decision by the Michigan Public Service Commission in a petition for rate increase where the commission was arbitrarily or unreasonably delaying consideration of the petitioner's case and such arbitrary or unreasonable delay was causing the petitioner confiscation as just defined.

The circuit court and the Court of Appeals are reversed and the matter is remanded to the circuit

---

[16] *Cf., Mountain States T & T Co v Public Utilities Commission,* — Colo —, 491 P2d 582, 585 (1971). In this case the telephone company attempted *de novo* rate review in the trial court. The Colorado Supreme Court noted that "[t]he trial de novo aspect of presenting evidence was properly rejected by the trial court."

court for entry of appropriate orders directing a full refund plus interest to the ratepayers because of an illegal exaction collected under an *ultra vires* order. Costs to the appellant.

T. M. Kavanagh, C. J., and Swainson, J., concurred with Williams, J.